State of Nebraska, appellee, v.
Adrian M. Casares, appellant.
___ N.W.2d ___

Filed June 19, 2015.    No. S-14-442.

1. **Effectiveness of Counsel: Records: Appeal and Error.** The resolution of an ineffective assistance of counsel claim made on direct appeal turns on the sufficiency of the record.

2. **Sentences: Appeal and Error.** An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court.

3. **Effectiveness of Counsel: Appeal and Error.** When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record. Otherwise, the issue will be procedurally barred.

4. **Effectiveness of Counsel: Proof.** To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that counsel's performance was deficient and that this deficient performance actually prejudiced his or her defense.

5. **Effectiveness of Counsel: Records: Appeal and Error.** A claim of ineffective assistance of counsel need not be dismissed merely because it is made on direct appeal. The determining factor is whether the record is sufficient to adequately review the question.

6. **Effectiveness of Counsel: Proof: Appeal and Error.** When an ineffective assistance of counsel claim is raised in a direct appeal, the appellant is not required to allege prejudice; however, an appellant must make specific allegations of the conduct that he or she claims constitutes deficient performance by trial counsel.

7. ____: ____: ____. General allegations that trial counsel performed deficiently or that trial counsel was ineffective are insufficient to raise an ineffective assistance claim on direct appeal and thereby preserve the issue for later review.

8. **Effectiveness of Counsel: Records: Appeal and Error.** An ineffective assistance of counsel claim made on direct appeal can be found to be without merit if the record establishes that trial counsel's performance was not deficient or that the appellant could not establish prejudice.

9. **Sentences: Evidence.** A sentencing court has broad discretion as to the source and type of evidence and information which may be used in determining the kind and extent of the punishment to be imposed, and evidence may be presented as to any matter that the court deems relevant to the sentence.

10. **Sentences.** When imposing a sentence, a sentencing judge should consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense, and (8) the amount of violence involved in the commission of the crime.

11. **Sentences: Appeal and Error.** Where a sentence imposed within the statutory limits is alleged on appeal to be excessive, the appellate court must determine whether the sentencing court abused its discretion in considering and applying the relevant factors as well as any applicable legal principles in determining the sentence to be imposed.

Appeal from the District Court for Lancaster County: PAUL D. MERRITT, JR., Judge. Affirmed.

Nancy K. Peterson for appellant.

Douglas J. Peterson, Attorney General, and Austin N. Relph for appellee.

HEAVICAN, C.J., WRIGHT, CONNOLLY, STEPHAN, MCCORMACK, MILLER-LERMAN, and CASSEL, JJ.

STEPHAN, J.

Adrian M. Casares pled no contest to an amended information charging one count of aiding and abetting second degree murder. He was subsequently sentenced to no less than life imprisonment or more than life imprisonment. In this direct appeal, he alleges that his trial counsel was ineffective in various respects and that his sentence was excessive. We affirm his conviction and sentence.

## I. FACTS

On December 30, 2012, at approximately 4 a.m., a newspaper carrier found the body of Tyler Schoenrock on a gravel road in rural Lancaster County, Nebraska. Schoenrock had been shot twice in the back and once in the head. The resulting investigation identified Casares and Miguel Castillo as suspects.

Casares was originally charged with making terroristic threats, a Class IV felony, and use of a firearm to commit a felony, a Class IC felony.[1] The information was later amended to add charges of possession of a firearm by a prohibited person, a Class ID felony, and accessory to a felony, a Class III felony.[2]

The State later moved to file a second amended information, in which it planned to charge a total of six crimes, including first degree murder, a Class IA felony.[3] But before that information was filed, the parties negotiated a plea agreement. Pursuant to the terms of that agreement, Casares entered a plea of no contest to a second amended information charging a single count of aiding and abetting second degree murder, a Class IB felony.[4]

At the plea hearing, the court had an extended colloquy with Casares discussing his rights, the nature of the charge, and the possible penalty. The factual basis for the plea was set forth in the written plea agreement, which characterized the stated facts as "true and undisputed." According to the factual statement in the plea agreement, Casares, Castillo, and Schoenrock were all involved with methamphetamine use and distribution. On December 29, 2012, Casares confronted Schoenrock at Schoenrock's residence with a handgun and

---

[1] See Neb. Rev. Stat. §§ 28-311.01 (Reissue 2008) and 28-1205(1)(c) (Cum. Supp. 2014).

[2] Neb. Rev. Stat. §§ 28-1206(3)(b) (Cum. Supp. 2014) and 28-204(2)(a) (Reissue 2008).

[3] See Neb. Rev. Stat. § 28-303 (Reissue 2008).

[4] See Neb. Rev. Stat. §§ 28-206 and 28-304 (Reissue 2008).

accused Schoenrock of being a law enforcement "'snitch.'" Casares later left the residence, but in the early morning hours of December 30, he and Castillo returned and picked Schoenrock up in a vehicle which Casares drove. Casares had the handgun with him, and a witness described the handgun and the ammunition it contained with specificity. The handgun and ammunition were eventually determined to have been used to kill Schoenrock. The handgun was stolen, and its owner informed police he noticed it was missing from his truck on December 25, shortly after a visit from Castillo and Casares.

Castillo was arrested soon after Schoenrock's body was discovered. He told police that after they picked Schoenrock up, Casares drove the vehicle out of the city into the country. Castillo stayed in the car while Casares and Schoenrock got out. Castillo told authorities that Casares was responsible for shooting Schoenrock at that location.

Casares was arrested on January 15, 2013, in Texas. At the time of the arrest, he was accompanied by a woman. He denied knowing Castillo well and denied being in Lincoln, Nebraska, when Schoenrock was killed. The woman later told police that she drove Castillo and Casares to her apartment after the shooting and that she went to Omaha, Nebraska, with them later in the day on December 30, 2012. On the way to Omaha, Castillo and Casares discussed disposing of the handgun, which was in a silver lockbox. The woman stated that she eventually buried the lockbox in the backyard of an Omaha residence, and eventually led police to it. Casares' cell phone records showed he was in and around Lincoln on December 29 and 30, and that the cell phone was frequently used for calls and messaging, except from 3:05 a.m. to 4:08 a.m. on December 30, when it was turned off. Casares informed the court at the time he entered his plea that he had no disagreement with the factual basis set forth in the plea agreement.

After accepting the plea, the court ordered a presentence investigation (PSI). After reviewing the results of this investigation and conducting a hearing, the district court sentenced Casares to a term of life-to-life imprisonment. Additional facts relevant to the analysis are included therein.

## II. ASSIGNMENTS OF ERROR

Casares assigns that his trial counsel was ineffective in (1) failing to take the depositions of certain witnesses, (2) failing to engage in effective advocacy at sentencing, (3) failing to obtain a drug and alcohol evaluation of Casares, (4) failing to arrange for Casares to review discovery, and (5) inducing Casares to enter his plea by promising him he would receive a specific sentence. In addition, Casares assigns that the sentence of life-to-life imprisonment is excessive and was an abuse of the sentencing court's discretion.

## III. STANDARD OF REVIEW

[1] The resolution of an ineffective assistance of counsel claim made on direct appeal turns on the sufficiency of the record.[5]

[2] An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court.[6]

## IV. ANALYSIS

### 1. Ineffective Assistance of Counsel

[3] Casares is represented in this direct appeal by different counsel than the counsel who represented him at the trial level. When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance

---

[5] See, *State v. Filholm*, 287 Neb. 763, 848 N.W.2d 571 (2014); *State v. Watt*, 285 Neb. 647, 832 N.W.2d 459 (2013).

[6] See *State v. McGuire*, 286 Neb. 494, 837 N.W.2d 767 (2013).

which is known to the defendant or is apparent from the record. Otherwise, the issue will be procedurally barred.[7]

[4-7] To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*,[8] the defendant must show that counsel's performance was deficient and that this deficient performance actually prejudiced his or her defense.[9] A claim of ineffective assistance of counsel need not be dismissed merely because it is made on direct appeal.[10] The determining factor is whether the record is sufficient to adequately review the question.[11] When the claim is raised in a direct appeal, the appellant is not required to allege prejudice; however, an appellant must make specific allegations of the conduct that he or she claims constitutes deficient performance by trial counsel.[12] General allegations that trial counsel performed deficiently or that trial counsel was ineffective are insufficient to raise an ineffective assistance claim on direct appeal and thereby preserve the issue for later review.[13]

[8] Appellate courts have generally reached ineffective assistance of counsel claims on direct appeal only in those instances where it was clear from the record that such claims were without merit or in the rare case where trial counsel's error was so egregious and resulted in such a high level of prejudice that no tactic or strategy could overcome the effect of the error, which effect was a fundamentally unfair trial.[14]

---

[7] *State v. Filholm, supra* note 5; *State v. Ramirez*, 284 Neb. 697, 823 N.W.2d 193 (2012).

[8] *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

[9] *State v. Ortega*, 290 Neb. 172, 859 N.W.2d 305 (2015); *State v. Rocha*, 286 Neb. 256, 836 N.W.2d 774 (2013).

[10] See, *State v. McClain*, 285 Neb. 537, 827 N.W.2d 814 (2013); *State v. Ramirez, supra* note 7.

[11] *Id.*

[12] *State v. Filholm, supra* note 5.

[13] *Id.*

[14] *State v. Sidzyik*, 281 Neb. 305, 795 N.W.2d 281 (2011).

An ineffective assistance of counsel claim made on direct appeal can be found to be without merit if the record establishes that trial counsel's performance was not deficient or that the appellant could not establish prejudice.[15]

Casares raises five allegations of ineffective assistance of counsel in this appeal. We address each in turn.

(a) Failure to Take Depositions

Casares claims that his trial counsel failed to take the depositions of certain witnesses, identified as Felicia Guevara, Perla Cisneros, and Isaiah Nevins. He alleges that these three witnesses were "critical" and that their testimony would have provided facts sufficient to argue that Castillo was the shooter and had lied to law enforcement.[16] Specifically, Casares alleges Guevara told law enforcement that prior to the murder of Schoenrock, Castillo had told her he was going to "'take care of a rat.'" Guevara also authored a letter to the court that was included in the PSI in which she stated Casares was innocent. Casares alleges that Cisneros was Castillo's girlfriend and told Nevins that "'we killed that fool.'"[17] And Casares alleges Nevins told investigators that he believed Castillo had killed Schoenrock and that he had seen Castillo with a gun prior to the murder. Casares also alleges that certain letters written by Nevins indicate Casares was not guilty. In sum, Casares argues that knowing these facts, counsel should have deposed these witnesses to find out more information, and that the failure to do so was deficient performance.

Because the record does not show whether these depositions were taken or whether the letters exist, it is insufficient for review of this claim on direct appeal, and we therefore do not reach it.

---

[15] See *State v. Filholm, supra* note 5.

[16] Brief for appellant at 12.

[17] *Id.* at 13.

### (b) Ineffective Advocacy
### at Sentencing

Casares argues that his counsel was ineffective at sentencing because he (1) allowed various letters of support for Casares to be included in the PSI, (2) did not object to certain victim impact statements included in the PSI, and (3) did not include certain depositions in the PSI.

### *(i) Letters of Support*

The letters of support are a part of the record before us. While certain of the letters express a belief that Casares was innocent, the prevailing tone of the letters is that Casares was a good person who did a bad thing. Casares argues they should not have been included, because they were attempts to demonstrate his innocence, which was no longer an issue at sentencing. Having viewed the letters, we find counsel was not deficient in allowing them to be included in the PSI.

### *(ii) Victim Impact Statements*

The victim impact statements Casares complains about are also part of the record before us. One was written by the sister of Schoenrock's girlfriend and one was written by a friend of Schoenrock's girlfriend. There are also impact statements written by the mother of Schoenrock's infant son in her own behalf and on behalf of the child.

According to Neb. Rev. Stat. § 29-2261(3) (Cum. Supp. 2014), the presentence investigation report should include any written statements submitted to either the county attorney or the probation officer by a victim. "Victim" in this context is statutorily defined in the case of a homicide as the "nearest surviving relative under the law as provided by section 30-2303."[18] Neb. Rev. Stat. § 30-2303 (Reissue 2008) provides that the nearest surviving relative is issue of the decedent, followed by the decedent's parents. Victims who meet this

---

[18] Neb. Rev. Stat. § 29-119(2)(b) (Cum. Supp. 2014). See § 29-2261(3) and (4).

definition have the right to make a written or oral impact statement and have it be included in the PSI.[19]

[9] Based on these statutes, only Schoenrock's infant son, and perhaps Schoenrock's parents, had the statutory right to have a victim impact statement included in the PSI. But the relevant statutes also state that a PSI is to include "any other matters that the probation officer deems relevant or the court directs to be included."[20] Further, a sentencing court has broad discretion as to the source and type of evidence and information which may be used in determining the kind and extent of the punishment to be imposed, and evidence may be presented as to any matter that the court deems relevant to the sentence.[21] Thus, although the victim impact statements to which Casares now objects were not required to be included in the PSI, they were not necessarily excludable. Because of this, and the district court's broad discretion to give the statements any weight they were due, we conclude that the files and records affirmatively show that trial counsel was not deficient in failing to object to the identified victim impact statements. Moreover, inclusion of the statements could not have resulted in prejudice to Casares under the *Strickland* test, because there is no reasonable probability that his sentence would have been different if these impact statements had been excluded from the PSI.

### (iii) Depositions

Casares claims that his trial counsel failed to include in the PSI copies of the depositions that were taken of Castillo and three others. He alleges that inclusion of these depositions would have demonstrated how the witnesses' stories changed over time. He alleges this information would have further

---

[19] Neb. Rev. Stat. § 81-1848(1)(d)(iv) (Reissue 2014). See Neb. Const. art. I, § 28.

[20] § 29-2261(3).

[21] *State v. Griffin*, 270 Neb. 578, 705 N.W.2d 51 (2005).

challenged the credibility of Castillo's claim that Casares was the shooter.

But the credibility of Castillo's story was not an issue at sentencing. The factual basis of Casares' no contest plea was that he drove Schoenrock to a rural area and shot him, while Castillo waited in the car. Casares expressly told the court at the time the plea was entered that he had "no disagreement" with this factual basis. Moreover, the PSI was over 2,000 pages long, and the court acknowledged at sentencing that "virtually everyone knowing any — having any knowledge about what happened prior to, at the time of, and shortly after the killing . . . lied to one degree or another to those investigating the murder." Additional examples of inconsistent statements or lies would not, with any reasonable likelihood, have convinced the sentencing court to impose a different sentence. This allegation is without merit.

### (c) Drug and Alcohol Evaluation

Casares alleges that his trial counsel was ineffective in failing to arrange for him to have a separate drug and alcohol evaluation and then include the results of that evaluation in the PSI. He alleges such an evaluation would have provided more detail about his life and was "one tool among many" that could have humanized Casares before the court.[22]

As noted, the PSI was extensive. It includes sections regarding Casares' background, criminal history, family life and relationships, use of alcohol and drugs, and prior treatment for alcohol and drugs, as well as the circumstances of the offense. Any additional information obtained by a drug and alcohol evaluation would have been largely cumulative. There is no reasonable probability that the sentence would have been different if a drug and alcohol evaluation had been included in the PSI. This allegation is without merit.

---

[22] Brief for appellant at 20.

### (d) Failure to Show Casares
### Discovery Materials

Casares claims his trial counsel did not arrange for him to review materials obtained during discovery before he entered his plea. He alleges that as a result, he was unable to make an informed decision about the resolution of his case. The record does not show whether Casares' counsel reviewed discovery with him, and the record is therefore insufficient to review this claim on direct appeal.

### (e) Promise of Specific Sentence

Casares claims that his trial counsel promised him he would receive a sentence of 30 to 60 years' imprisonment if he entered his plea of no contest. But the files and records of the case affirmatively show that this allegation of deficient performance has no merit. At the plea hearing, Casares was specifically asked whether "any promises or representations" had been made to him "to get [him] to enter [his] plea," and he responded "[n]o." He was also specifically asked whether "anyone made any promises or representations" to him as to what the "sentence will be" and again responded "[n]o." He also was asked whether any inducement or promise was made to get him to enter his plea, and he again responded "[n]o." This record affirmatively refutes Casares' claim that he was promised a sentence of 30 to 60 years' imprisonment. This claim of ineffective assistance of counsel is without merit.

### 2. Excessive Sentence

Casares was sentenced to a minimum term of life imprisonment and a maximum term of life imprisonment for aiding and abetting second degree murder. He alleges the sentence was excessive.

[10,11] Casares' sentence was within the statutory limits,[23] and an appellate court will not disturb a sentence imposed

---

[23] See Neb. Rev. Stat. § 28-105 (Cum. Supp. 2014) and §§ 28-206 and 28-304.

within the statutory limits absent an abuse of discretion by the trial court.[24] When imposing a sentence, a sentencing judge should consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense, and (8) the amount of violence involved in the commission of the crime.[25] Where a sentence imposed within the statutory limits is alleged on appeal to be excessive, the appellate court must determine whether the sentencing court abused its discretion in considering and applying the relevant factors as well as any applicable legal principles in determining the sentence to be imposed.[26]

Casares argues his life sentence was excessive primarily because Castillo received a sentence of 55 to 70 years. In doing so, however, Casares acknowledges that Castillo pled to one count of aiding and abetting the use of a firearm during the commission of a felony and one count of accessory to a felony. He also acknowledges that the prosecutor submitted a letter urging the court when sentencing Castillo to consider that Castillo "'deserves consideration for his cooperation and willingness to testify.'"[27] It is thus apparent from Casares' own argument that Castillo was convicted of a different crime and that Castillo, but not Casares, chose to cooperate with the investigation. Both of these are valid reasons for the disparity in the sentences imposed on the two men.

Moreover, Casares' criminal history and background, as demonstrated in the PSI, supports the life-to-life sentence. Prior to imposing the sentence, the trial court reviewed the entire PSI and considered Casares' circumstances as a whole.

---

[24] *State v. McGuire, supra* note 6.

[25] *Id.*; *State v. Dixon*, 286 Neb. 334, 837 N.W.2d 496 (2013).

[26] *State v. Dixon, supra* note 25; *State v. Erickson*, 281 Neb. 31, 793 N.W.2d 155 (2011).

[27] Brief for appellant at 29.

In concluding that life-to-life imprisonment was an appropriate sentence, it noted that Schoenrock's killing was "intentional and cold blooded" and that Casares was a "dangerous person who needs to be kept off the streets and away from the public as long as possible." The record demonstrates that the sentence imposed was not an abuse of discretion.

## V. CONCLUSION

We do not reach Casares' claims that his trial counsel was ineffective in failing to take certain depositions and in failing to review discovery materials with him, because the record on direct appeal is insufficient for us to do so. We conclude that his remaining claims of ineffective assistance of counsel are without merit and that his sentence is not excessive. Accordingly, we affirm the conviction and sentence.

AFFIRMED.