IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. MARTINEZ

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

JUAN MARTINEZ, APPELLANT.

Filed August 11, 2015.    No. A-14-1053.

Appeal from the District Court for Douglas County: LEIGH ANN RETELSDORF, Judge. Affirmed.

Thomas C. Riley, Douglas County Public Defender, and Allyson A. Mendoza for appellant.

Douglas J. Peterson, Attorney General, and George R. Love for appellee.

IRWIN, INBODY, and RIEDMANN, Judges.

IRWIN, Judge.

## I. INTRODUCTION

Juan Martinez appeals his conviction and sentence on a charge of third degree sexual assault of a child. On appeal, Martinez challenges the trial court's rulings on evidentiary matters, the sufficiency of the evidence to support his conviction, the sentence imposed, and the effectiveness of trial counsel's assistance. We find no merit to Martinez' claims on appeal, and we affirm.

## II. BACKGROUND

The events giving rise to this appeal occurred in the Spring of 2010. Martinez, whose date of birth is in June 1960, offered to take care of the victim, Brenda F., whose date of birth is in January 2000, while Brenda's mother worked. Martinez is Brenda's uncle.

- 1 -

Brenda testified Martinez took her to his house, that the two started watching television, that Martinez began telling Brenda that "it was cold," and that Martinez "started touching [her] in [her] private parts." She testified that Martinez touched her "under [her] jeans" and "underneath" her underwear. On a diagram, she identified that Martinez touched her vaginal area. She testified that Martinez "just lay [his hand] there" for "[l]ike around ten seconds" and that he "kept doing that." She testified that Martinez placed his hand down her pants and underwear "[a]round three times."

Brenda testified that Martinez "asked [her] if he could touch [her] breasts, but [she] answered him, 'No.'" She testified that after she told him that he could not touch her breasts, "[h]e started to tickle [her]." She testified that Martinez tickled her "[o]n [her] tummy, [her] stomach." She testified that "then [Martinez] took [her] to his bedroom," where he "laid [her] on the bed and . . . then he got on top of [her]."

Brenda testified that Martinez "told [her] to give him a kiss on his cheek, and . . . bit [her] lip," and that he "started touching [her] in the same place as before." She testified that when Martinez touched her vaginal area, underneath her clothing and underwear, "[h]e just shaked [his hand] a little bit, but he really didn't move it. He swayed it."

Brenda testified that Martinez then took her to a restaurant. She testified that after the restaurant, "while [they] were driving back to [Martinez'] house, [she] asked him if [they] could go back to [her] house, but he said in order to do that, [she] had to go and take all of [her] clothes off in front of him."

Brenda testified that after they returned to Martinez' house, they "started to play this game [with cards]." She testified that Martinez told her "that if he won the game, . . . [she] had to let him do things to [her]. . . . [She] had to let him touch [her] or kiss [her]." She testified that Martinez touched her again, "[i]n the same place" and with "his hand," but this time "[o]ver [her] underwear."

Brenda testified that at one point during the day she used the bathroom in Martinez' house and that she "tried to, like, get out the window, but [she] couldn't, so [she] stayed there for a while, and then [she] had to go back" to the room where Martinez was.

Brenda testified that Martinez "told [her] that [she] had to promise that [she] wouldn't tell anybody," and that "[she] told him [she] would promise, but when [she] got home, [she] told [her] mom right away."

Brenda testified that she and Martinez drove to pick up Martinez' daughter, Brenda's cousin, from her school. She testified that after they picked up her cousin, they "went to pick up [Brenda's] mom from her work." Martinez then drove and dropped Brenda and her mother off at their house. According to Brenda's mother, Martinez told her that Brenda "had a lot of fun, that she had had a good time, that she didn't miss [her mother] at all" and that "he repeated several times that she had a lot of fun and had a nice time, and that if [she] ever needed anybody to take care of [Brenda] again, he could."

Brenda testified that she "waited until [Martinez] drove off so [she] could explain to [her] mom that [she] didn't want to be with him anymore and [she] told her what had happened that day." Brenda testified that when she told her mother, she was "nervous," that she was upset about what had happened, that she "started to cry," and that she was afraid that her parents would get into trouble if they reported Martinez' actions to law enforcement.

Brenda's mother testified that Brenda "was crying" when she told her about the incident. She testified that Brenda was "crying a lot and shaking, and the more she told [her mother], the more she cried."

Brenda's mother testified that approximately four weeks after the incident, she spoke with Martinez and his wife, who was her sister. She testified that she informed Martinez' wife that Martinez "had touched [Brenda]." She testified that Martinez initially "[m]oved his head like saying 'no'" but that after she said that she could call Brenda to "say it to his face" and that she would "call the police," Martinez "said he was sorry" and "asked for forgiveness and said it was something stupid." She testified that Martinez "said that he also wanted to apologize to Brenda."

Brenda testified that she has experienced "trouble breathing and . . . anxiety" since the incident and that she has seen a "psychologist or therapist." She testified that she "started not trusting people as much" and "got more quiet" and "whenever [she] saw a man or something, [she] got really nervous."

In January 2013, Brenda's mother took her to see a doctor. She testified that Brenda had become "really depressed." Brenda testified that her doctor "asked [her] if anyone had touched [her] before, and then [her mom] started explaining to her what had happened." She testified that she confirmed to the doctor what had happened. The doctor then notified law enforcement.

In October 2013 an Information was filed, in which the State alleged that Martinez was guilty of third degree sexual assault of a child for actions taking place between May 1 and May 31, 2010. In August 2014 an Amended Information was filed, alleging that the actions took place between February 25 and May 21, 2010.

Prior to trial, the State filed two motions seeking a pretrial ruling on the admissibility of certain evidence the State intended to present at trial. The first concerned the State's desire to adduce testimony from one of Brenda's cousins about an incident wherein Martinez allegedly engaged in improper touching of her when she was approximately 9 years of age, and the second concerned the State's desire to adduce testimony concerning Brenda's statements to her mother on the day of the alleged incident. After an evidentiary hearing on the motions, the court ruled that the testimony would be admissible, granting the State's motions.

Also prior to trial, Martinez filed two motions in limine, in which he sought a pretrial ruling on the admissibility of testimony he anticipated the State presenting at trial. Both motions sought a ruling in limine preventing testimony concerning statements made by any party concerning the alleged incident. After an evidentiary hearing on the motions, the court ruled that it would overrule the motions because they were worded too broadly, but that it would follow the appropriate rules of evidence governing the admissibility of statements made outside of court.

After a trial, a jury found Martinez guilty of third degree sexual assault of a child. The court entered an order on the verdict and subsequently sentenced Martinez to 5 to 5 years' imprisonment.

This appeal followed.

III. ASSIGNMENTS OF ERROR

Martinez asserts five errors on appeal. First, he asserts that the district court erred in its ruling concerning the admissibility of evidence of prior bad acts. Second, he asserts that the court erred in its ruling concerning the admissibility of Brenda's statements to her mother on the day of the incident. Third, he asserts that there was insufficient evidence to sustain his conviction. Fourth,

he asserts that the court imposed an excessive sentence. Finally, he asserts that he received ineffective assistance of trial counsel.

## IV. ANALYSIS

### 1. PRIOR BAD ACTS EVIDENCE

Martinez first asserts that the district court erred in finding that evidence of a prior incident wherein he allegedly improperly touched another minor niece. Martinez alleges that the State failed to adduce sufficient evidence that the alleged prior event actually occurred and that any probative value of the testimony was substantially outweighed by its prejudicial effect. We find no merit to these assertions.

In proceedings where the Nebraska Evidence Rules apply, the admissibility of evidence is controlled by the Nebraska Evidence Rules; judicial discretion is involved only when the rules make discretion a factor in determining admissibility. *State v. Valverde*, 286 Neb. 280, 835 N.W.2d 732 (2013); *State v. Kibbee*, 284 Neb. 72, 815 N.W.2d 872 (2012). Where the Nebraska Evidence Rules commit the evidentiary question at issue to the discretion of the trial court, an appellate court reviews the admissibility of evidence for an abuse of discretion. *Id.*

The first step in determining whether evidence of prior sexual contacts should be admitted is to review the evidence pursuant to Neb. Rev. Stat. § 27-414 (Cum. Supp. 2014). *State v. Kibbee, supra*.

Section 27-414 provides that in a criminal case where the accused is accused of sexual assault, evidence of the accused's commission of another offense of sexual assault is admissible if there is clear and convincing evidence otherwise admissible that the accused committed the other offense. Before a trial court can admit evidence of the accused's commission of another offense of sexual assault under § 27-414, the court must conduct a hearing outside the presence of the jury and apply a balancing analysis consistent with Neb. Rev. Stat. § 27-403 and shall admit the evidence unless the risk of prejudice substantially outweighs the probative value of the evidence. Section 27-414(3). In assessing the balancing, the court may consider any relevant factor, including the probability that the other offense occurred, the proximity in time and intervening circumstances of the other offense, and the similarity of the other acts to the crime charged. *Id.*

The record presented in this case supports the district court's conclusion that the State adduced sufficient evidence to clearly and convincingly establish that Martinez committed the prior offense. The alleged prior victim, who was 16 years of age at the time of her testimony, testified that Martinez had visited her family in Chicago when she was 9 years of age; that when she decided to go to bed, Martinez asked her for a hug; that when she gave Martinez a hug, he would not let her go, sat her on his lap, and placed his hand underneath her pajama pants and began rubbing her clitoris; that she said, "No," and attempted to get away from Martinez; that Martinez grabbed her around her stomach and laid her down on a couch and got on top of her and attempted to touch her chest; that nobody else was in the room when this happened; and that Martinez told her not to tell anyone. Although Martinez points to alleged inconsistencies in the niece's testimony, and between the niece's testimony and other testimony, as indicative that the State failed to demonstrate that the testimony was admissible, we cannot find that the court erred in finding the niece's testimony sufficient to satisfy § 27-414.

Martinez also argues that "there is no indication that the court applied § 27-403, balancing to determine whether the evidence would substantially prejudice [Martinez]." Brief for Appellant at 17. Martinez' assertion in this regard is directly contradicted by the court's order on the admissibility of this evidence. In the court's order, the court specifically recognized that § 27-414 "calls for a balancing test under Neb. Rev. Stat. § 27-403 to determine admissibility" and specifically quoted the portion of § 27-414(3) requiring the § 27-403 balancing analysis. The court specifically addressed the factors set forth as appropriately considered in this balancing analysis, including the probability that the prior offense occurred, the similarity of the prior acts to the allegations in the present case, and the proximity in time of the prior offense.

The court specifically iterated factual findings showing the court's consideration of these factors. The court found that the other niece had provided credible testimony with an appropriate degree of recollection. The court found that there were sufficient similarities between Martinez' prior acts with the other niece and the allegations in the present case; including that both incidents involved nieces of Martinez who were between the ages of 8 and 10 years at the time of the incidents, touching of the nieces' vaginal areas under their pants, attempts to touch the nieces' chests, and telling them not to tell anyone else. The court also acknowledged that the prior acts had occurred approximately 7 years prior, but concluded that the remoteness was counterbalanced by the similarities between the events. The court specifically concluded that "[t]here is no unfair prejudice as required for exclusion under Rule 403."

We reject Martinez' assertion that there is no indication that the court engaged in the § 27-403 balancing required by § 27-414, as the court's order clearly and specifically contradicts that assertion. We also find no reversible error in the court's application of that balancing analysis. We find no merit to Martinez' assertion that the court erred in allowing evidence of his conduct with the other niece. This assigned error is without merit.

We note that the State asserts that Martinez has waived his right to challenge the admissibility of this testimony on appeal because he failed to object to it at trial. The State argues that "[h]ere, no objection was posed at trial regarding the testimony of [the other niece] concerning Martinez sexual assault of her years ago. Appellate review of this issue has been waived." Brief for Appellee at 6. The State misstates the record in this respect.

At trial, as soon as the State called the other niece to testify, Martinez' counsel asked to approach the bench. Counsel then specifically indicated as follows: "I should have restated my motion before the jury was brought out about the 414 testimony. Excuse me. I am restating my original objection to [the other niece's] 414 testimony in its entirety." Martinez' counsel specifically renewed the objection to this evidence that was the subject of the court's pretrial ruling in limine, and the State's assertion that no objection was made and the right to challenge the admission of the testimony on appeal is a misstatement of the record presented to us.

## 2. BRENDA'S STATEMENTS TO MOTHER

Martinez next asserts that the district court erred in finding that statements Brenda made to her mother on the day of the incident were admissible as excited utterances. Martinez argues that Brenda was not experiencing the shock of the event any longer when she made the comments, and that they were inadmissible hearsay. We find no merit to this assertion.

Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. *State v. Hale*, 290 Neb. 70, 858 N.W.2d 543 (2015). Hearsay is not admissible unless otherwise provided for under the Nebraska Evidence Rules or elsewhere. *Id.*

The statements at issue in this appeal are statements made by Brenda to her mother on the day of the incident, wherein Brenda told her mother that Martinez had touched her private parts, inside clothing at her vagina. Those statements were made by Brenda at a time other than while testifying and were offered to prove the truth of the matter asserted. The statements were hearsay. See *Id.*

Excited utterances are one of the exceptions to the prohibition on the admissibility of hearsay. *State v. Hale, supra*. For a statement to be an excited utterance, the following criteria must be met: (1) There must be a startling event; (2) the statement must relate to the event; and (3) the declarant must make the statement while under the stress of the event. *Id.* The justification for the excited utterance exception is that circumstances may produce a condition of excitement which temporarily stills the capacity for reflection and produces utterances free of conscious fabrication. *Id.*

Martinez does not dispute that the alleged incident would qualify as a startling event or that Brenda's statements to her mother related to the event. The issue is whether Brenda made her statements while still under the stress of the event.

An excited utterance does not have to be contemporaneous with the event. *State v. Hale, supra*. It may be subsequent to the event if there was not time for the exciting influence to lose its sway. *Id.* The true test is not when the exclamation was made but whether, under all the circumstances, the declarant was still speaking under the stress of nervous excitement and shock caused by the event. *Id.*

Relevant facts include the declarant's manifestation of stress and the declarant's physical condition. *Id.* Also relevant is whether the declarant spoke in response to questioning. *Id.*

Here, the record indicates that Brenda made the statements to her mother once the two left Martinez' car and before opening the door to their house. Brenda's mother testified that Brenda appeared very nervous, was crying, and was shaking when she made the comments. In her deposition, received in lieu of live testimony at the pretrial hearing concerning the admissibility of the statements, Brenda's mother testified that Brenda "was crying. She was shaking. Her hands were trembling."

Martinez argues that the fact that Brenda waited until Martinez had dropped off Brenda and her mother and had left demonstrates "conscious analysis" and shows that "she had time for conscious reflection and was not under the stress of shock." Brief for Appellant at 19. We disagree. Brenda was, at the time, a 10 year old child who had allegedly been sexually assaulted by Martinez earlier in the day. The fact that she told her mother about the incident immediately after she was no longer in Martinez' presence, instead of telling her mother while still in a vehicle with Martinez, does not dictate a conclusion that she was no longer under the influence of the stress of the assault.

The district court concluded that the statements were made immediately after Martinez left, on the same day as the sexual assault, and related directly to the event. The court concluded that Brenda's reaction and demeanor were sufficient for the court to conclude that she was under the stress of the event. We find no error in this conclusion. This assigned error is without merit.

## 3. Sufficiency of Evidence

Martinez next asserts that the State failed to adduce sufficient evidence to sustain the conviction. Martinez argues that the State "failed to prove that [Martinez] subjected Brenda, while under the age of fourteen years old, to sexual contact" because the evidence adduced by the State "lacks the probative value to sustain a guilty verdict." Brief for Appellant at 20. This assertion is meritless.

In reviewing a criminal conviction for a sufficiency of the evidence claim, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact. *State v. Escamilla*, 291 Neb. 181, 864 N.W.2d 376 (2015). The relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.*

Neb. Rev. Stat. § 28-320.01 provides that a person commits sexual assault of a child in the third degree if he or she is at least nineteen years of age or older and subjects another person fourteen years of age or younger to sexual contact but does not cause serious personal injury to the victim.

Martinez' argument on appeal is that the State failed to adduce any physical evidence of the sexual assault and that "Brenda's testimony is the only evidence of the alleged crime as she was the sole source of information regarding the incident to her mother, to the doctor, and to the police." Brief for Appellant at 20-21.

Martinez' arguments on appeal are entirely challenges to the credibility of the witnesses, which it is well established that we will not reweigh or pass on. Viewed in the light most favorable to the State, the evidence indicates that Martinez, when he was approximately 50 years of age, placed his hand underneath the pants and underwear of Brenda, when she was approximately 10 years of age, and made contact with her vagina with his hand. Viewed in the light most favorable to the State, the evidence indicates that Martinez did this several times, requested to touch Brenda's breasts, and laid her on a bed and got on top of her before touching her vagina again.

Viewed in a light most favorable to the State, Brenda's testimony satisfies all of the statutory elements necessary to sustain a conviction. We cannot say that no rational trier of fact could have found the elements proven beyond a reasonable doubt. This assignment of error is meritless.

## 4. Excessive Sentence

Martinez next asserts that the sentence imposed by the district court is excessive. Martinez argues that a more lenient sentence would have been more appropriate. We find no merit to this assertion.

An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court. *State v. Casares*, 291 Neb. 150, 864 N.W.2d 667 (2015). Where a sentence imposed within the statutory limits is alleged on appeal to be excessive, the appellate court must determine whether the sentencing court abused its discretion in considering and applying the relevant factors as well as any applicable legal principles in determining the sentence to be imposed. *Id.*

In this case, Martinez was convicted of a Class IIIA felony offense, carrying a potential sentence of up to 5 years' imprisonment. See Neb. Rev. Stat. § 28-105 (Cum. Supp. 2014). Martinez was sentenced to a term of 5 to 5 years' imprisonment. His sentence was within the statutory limits.

Martinez argues on appeal that the court did not give sufficient consideration to mitigating factors, including Martinez' age, family, gainful employment, lack of history of drug and alcohol usage, and lack of criminal history. He argues that the court placed too much emphasis on the nature of the offense in this case.

The record reflects that at the time of sentencing Martinez' counsel argued to the trial court the mitigating factors that he points to in this appeal. Before imposing a sentence, the court specifically indicated that it had "considered the information regarding [Martinez], his age, his lack of any formal education, his background, his minimal past criminal history, which cuts in his favor." We cannot find an abuse of discretion in the sentence imposed in this case. This assigned error is meritless.

### 5. INEFFECTIVE ASSISTANCE OF COUNSEL

Finally, Martinez asserts that his trial counsel failed to provide effective assistance. He asserts that his trial counsel was ineffective with regard to the presentation of pretrial motions in limine, with regard to failing to make objections to testimony at trial, and with regard to failing to call a rebuttal witness. We find that effectiveness of counsel in these regards cannot be addressed on direct appeal because the record is insufficient at this time.

Claims of ineffective assistance of counsel raised for the first time on direct appeal do not require dismissal ipso facto; the determining factor is whether the record is sufficient to adequately review the question. *State v. Ortega*, 290 Neb. 172, 859 N.W.2d 305 (2015). Whether a claim of ineffective assistance of trial counsel may be determined on direct appeal is a question of law. *State v. Abdullah*, 289 Neb. 123, 853 N.W.2d 858 (2014). In reviewing claims of ineffective assistance of counsel on direct appeal, an appellate court decides only questions of law: Are the undisputed facts contained within the record sufficient to conclusively determine whether counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance? *State v. Castillo-Zamora*, 289 Neb. 382, 855 N.W.2d 14 (2014).

Appellate courts have generally reached ineffective assistance of counsel claims on direct appeal only in those instances where it was clear from the record that such claims were without merit or in the rare case where trial counsel's error was so egregious and resulted in such a high level of prejudice that no tactic or strategy could overcome the effect of the error, which effect was a fundamentally unfair trial. *State v. Casares*, 291 Neb. 150, 864 N.W.2d 667 (2015).

In the present case, the record is insufficient for us to evaluate counsel's actions in each respect that Martinez is asserting the performance was deficient. Evaluation of the pretrial motions, the handling of objections to testimony, and the decision of whether to call rebuttal witnesses all amount to assessing trial strategy, for which the record is insufficient. See *State v. Dubray*, 289 Neb. 208, 854 N.W.2d 584 (2014). Thus, we cannot address the merits of this assignment of error.

## V. CONCLUSION

We find no merit to Martinez' assertions of error on appeal. We affirm.

AFFIRMED.