IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. VALDEZ

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

MIKE H. VALDEZ, APPELLANT.

Filed March 26, 2019.    No. A-18-014.

Appeal from the District Court for Scotts Bluff County: LEO P. DOBROVOLNY, Judge. Affirmed.

Leonard G. Tabor for appellant.

Douglas J. Peterson, Attorney General, and Siobhan E. Duffy for appellee.

MOORE, Chief Judge, and RIEDMANN and BISHOP, Judges.

RIEDMANN, Judge.

## INTRODUCTION

Mike H. Valdez appeals from his convictions and sentences in the district court for Scotts Bluff County. On appeal, he challenges the denial of his counsel's motion to withdraw and the sufficiency of the evidence to sustain his convictions. He also alleges that his trial counsel was ineffective and his sentences are excessive. We conclude that the record on direct appeal is insufficient to address two of the ineffective assistance of counsel claims. We otherwise find no merit to the arguments raised on appeal and therefore affirm.

## BACKGROUND

On January 25, 2017, the WING Drug Task Force in Scotts Bluff County arranged a controlled buy of methamphetamine (meth) using a cooperating individual (CI). The CI and another woman arranged to meet Valdez in a parking lot in order to buy meth from him. Upon

meeting, Valdez got into the backseat of the CI's vehicle, and the passenger gave Valdez some money. Valdez briefly returned to the vehicle in which he arrived, and then got back into the CI's vehicle but never gave any meth to the CI or the passenger.

A WING investigator was conducting surveillance of the buy, and once the CI began driving away with Valdez in the vehicle, he contacted Scottsbluff police to stop the vehicle because Valdez had warrants out for his arrest. Scottsbluff police officer Phillip Eckerberg attempted a traffic stop. The CI observed the police lights behind her vehicle and wanted to stop, but Valdez told her to keep going and not pull over. She eventually pulled over, however, and Valdez jumped out of the vehicle and started running. Eckerberg chased Valdez through a driveway, around a house, and over a fence to where Valdez was ultimately apprehended by other officers. At the time Valdez jumped out of the CI's vehicle, the passenger observed that Valdez was holding a small black and gray gun in his hand.

The WING investigator also saw Valdez jump out of the vehicle and noticed that he had an object in his right hand that looked like a gun. Based on his observation, an announcement was put out over the police radio that Valdez had been holding a gun. After Valdez was apprehended, Eckerberg went to the police station to review video of the incident that had been captured on his in-car camera to determine whether he could identify a gun in Valdez' hand. In the video, he could see what appeared to be a silver and black gun in Valdez' right hand at the time Valdez exited the CI's vehicle. Eckerberg then returned to the scene to search for the gun. Another Scottsbluff police officer, Tyler Fliam, located a silver and black gun in the snow in one of the backyards that Valdez had run through. The search of the scene also led to the discovery of a small cellophane packet containing meth.

Based on this incident, Valdez was charged with possession of a firearm by a prohibited person, possession with intent to distribute a controlled substance (meth), possession of a firearm while in violation of a Class II felony drug offense, and obstructing a peace officer. Valdez was appointed counsel to represent him. On July 31, 2017, Valdez' counsel filed a motion to withdraw alleging that there had been a breakdown in the attorney-client relationship and that Valdez did not want counsel to work on his case, and therefore, adequate representation was impossible. A hearing on the motion was held on August 7. A transcript of the hearing is not contained in the record before us, but the district court apparently denied the motion.

Counsel filed a second motion to withdraw on September 21, 2017. He again alleged that there had been a breakdown in the attorney-client relationship making adequate representation impossible. Attached to the motion was a pro se handwritten motion that Valdez addressed to the Nebraska appellate courts. It is captioned as a "Motion for Writ of Mandamus." In it, Valdez stated that his counsel had been appointed to represent him in four separate criminal cases, including the instant case. He alleged that in the course of one of the cases, he learned of what he considered to be "a violation of professional ethical conduct" by his counsel. He confronted counsel, who denied any unethical conduct. Based upon Valdez' belief that counsel had acted unethically and had not properly attended to a separate criminal matter, resulting in his conviction, Valdez asked that the court allow a change in defense counsel.

At a hearing on the motion, the district court observed that no evidence had been presented to show that Valdez had been improperly or unfairly prejudiced by his counsel's actions or that

counsel was not competent. The court also noted that the law does not allow defendants with appointed counsel to have counsel of their choosing. The court therefore denied the motion.

A jury trial was held in October 2017. In addition to evidence establishing the facts set forth above, the evidence presented at trial revealed that DNA testing determined that Valdez was included as a contributor to DNA found on the gun and its magazine. The odds of someone other than Valdez contributing to the DNA found on the gun was approximately 1 in 8.3 million, and the odds of someone other than Valdez contributing to the DNA found on the magazine was approximately 1 in 1.21 billion.

Four still photographs from the video recording of the incident were received into evidence at trial. In them, Valdez can be seen exiting the CI's vehicle holding an object in his right hand. Eckerberg was shown the four photographs and explained that in the first two photographs, Valdez appears to be holding something in his right hand that looks silver and shiny, which was consistent with the silver and black gun found at the scene. In the next two photographs, Eckerberg described seeing what appears to be the barrel of the gun's grip hanging from the bottom of Valdez' right hand. Likewise, Fliam, a certified law enforcement officer and member of the Scotts Bluff County SWAT team, testified at trial that he is very familiar with what guns look like and opined that the object seen in Valdez' hand in the photographs appears to be a gun.

A WING investigator who was involved in the January 25, 2017, controlled buy testified that he gave the CI $50 to use to buy meth, which would purchase approximately 0.5 grams. The amount of meth in the baggie found at the scene here was 0.5138 grams.

A jury found Valdez guilty of possession of a firearm by a prohibited person; possession of meth, which is a lesser included offense of possession with intent to distribute meth; and obstructing a peace officer. Valdez filed a motion for new trial, which was denied. He was sentenced to 8 to 10 years' imprisonment for possession of a firearm by a prohibited person, 2 to 2 years' imprisonment for possession of meth, and 1 to 1 year's imprisonment for obstructing a peace officer. The sentences were ordered to run consecutively. Valdez appeals to this court.

## ASSIGNMENTS OF ERROR

Valdez assigns that the district court erred in (1) denying trial counsel's motion to withdraw and motion for continuance, (2) finding sufficient evidence to sustain the convictions, and (3) imposing excessive sentences. He also alleges that he received ineffective assistance of counsel.

## STANDARD OF REVIEW

We review the trial court's decision on a motion to withdraw as counsel for an abuse of discretion. *State v. McGuire*, 286 Neb. 494, 837 N.W.2d 767 (2013).

In reviewing a criminal conviction for a sufficiency of the evidence claim, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact. The relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. McCurdy*, 301 Neb. 343, 918 N.W.2d 292 (2018).

The resolution of an ineffective assistance of counsel claim made on direct appeal turns on the sufficiency of the record. *State v. Casares*, 291 Neb. 150, 864 N.W.2d 667 (2015).

An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court. *Id*.

ANALYSIS

*Motion to Withdraw.*

Valdez assigns that the district court erred in denying his trial counsel's motion to withdraw and motion for continuance. He also argues that the court erred in denying his motion for new trial. An alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error to be considered by an appellate court. *State v. Chacon*, 296 Neb. 203, 894 N.W.2d 238 (2017). Valdez does not specifically assign error with respect to his motion for new trial and does not specifically argue the denial of his motion for continuance. We therefore do not address those issues. As for the motion to withdraw, we conclude that the district court did not abuse its discretion in not allowing counsel to withdraw.

Trial counsel was appointed to represent Valdez based upon a finding that Valdez is indigent. A defendant is not entitled to appointed counsel of his or her choice. *State v. Pullens*, 281 Neb. 828, 800 N.W.2d 202 (2011). Mere distrust of, or dissatisfaction with, appointed counsel is not enough to secure the appointment of substitute counsel, and unless the defendant can show good cause to the court for the removal of counsel, his or her only alternative is to proceed pro se if competent to do so. *Id*.

In addition, the Nebraska Supreme Court has held that appointed counsel must remain with an indigent accused unless one of the following conditions is met: (1) The accused knowingly, voluntarily, and intelligently waives the right to counsel and chooses to proceed pro se; (2) appointed counsel is incompetent, in which case new counsel is to be appointed; or (3) the accused chooses to retain private counsel. *State v. McGuire*, 286 Neb. 494, 837 N.W.2d 767 (2013). It is undisputed that Valdez did not elect to proceed pro se or retain private counsel. In his pro se motion addressed to the appellate courts, Valdez requested that the court "allow a change of defense counsel." Thus, under *State v. McGuire, supra*, in order to obtain new appointed counsel, Valdez was required to establish that trial counsel was incompetent; Valdez' distrust or dissatisfaction with trial counsel is insufficient to support a change in appointed counsel.

Here, although Valdez alleged in his pro se motion that trial counsel committed "a violation of professional ethical conduct," he did not elaborate on the specifics of trial counsel's actions. At the hearing on the motion to withdraw, the State argued that it had "been through this with Mr. Valdez before." Indeed, trial counsel was appointed to represent Valdez in multiple concurrent but unrelated criminal proceedings. In one of those cases, Valdez appealed his convictions for robbery, use of a weapon to commit a felony, and possession of a weapon by a prohibited person. See *State v. Valdez*, No. A-17-1114, 2018 WL 6523114 (Neb. App. Dec. 11, 2018) (selected for posting to court website). On appeal, as here, Valdez challenged the denial of his trial counsel's motion to withdraw from representing him, and we found that there was no indication that trial counsel was incompetent or unwilling to work with Valdez. See *id*. Likewise here, Valdez provided no evidence or specific conduct to support a finding that trial counsel was incompetent. His dissatisfaction with

trial counsel was an insufficient basis upon which to allow trial counsel to withdraw. Accordingly, the district court did not abuse its discretion in denying counsel's motion to withdraw.

*Sufficiency of Evidence.*

Valdez argues that the evidence was insufficient to sustain his convictions. We disagree.

Valdez was convicted of possession of a firearm by a prohibited person, possession of meth, and obstruction of a peace officer. A person commits the offense of possession of a deadly weapon by a prohibited person if he or she possesses a firearm and he or she has previously been convicted of a felony. Neb. Rev. Stat. § 28-1206 (Cum. Supp. 2018). The parties stipulated that Valdez was prohibited from possessing a firearm on January 25, 2017, because he had previously been convicted of a felony.

The passenger who was in the CI's vehicle with Valdez testified at trial that Valdez had a black and gray gun in his hand when he jumped out of the vehicle and started running. Similarly, the WING investigator who observed the traffic stop saw Valdez jump out of the vehicle with an object in his hand that appeared to be a gun. When Eckerberg and Fliam reviewed the video and photographs from the traffic stop, they too observed what appeared to be a gun in Valdez' right hand as he exited the vehicle and ran. The photographs captured from the video appear to show an object in Valdez' hand which a rational juror could conclude was a gun. Additionally, a gun was located at the scene, and Valdez was included as a contributor to DNA found on the gun and its magazine. Accordingly, we conclude that the evidence was sufficient for the jury to conclude that Valdez possessed a gun on January 25, 2017, and was prohibited from doing so because he was a convicted felon.

Valdez was also convicted of possession of meth. A person knowingly or intentionally possessing a controlled substance, subject to certain exceptions not relevant here, is guilty of a Class IV felony. Neb. Rev. Stat. § 28-416(3) (Cum. Supp. 2018). Meth is a Schedule II controlled substance. See Neb. Rev. Stat. § 28-405 (Cum. Supp. 2018).

In the present case, the CI received $50 to complete a controlled buy of meth from Valdez. She gave the money to the passenger, who gave it to Valdez when he entered the CI's vehicle. Valdez briefly returned to the vehicle in which he arrived and then got back into the CI's vehicle. He never provided the CI or the passenger any meth, and police located a baggie containing meth at the scene. The amount of meth in the baggie was consistent with an amount that could be purchased for $50. Based on this evidence, we conclude that the jury could have found beyond a reasonable doubt that Valdez was in possession of meth.

Finally, Valdez was convicted of obstructing a peace officer. A person commits this offense as relevant here when, by using or threatening to use violence, force, physical interference, or obstacle, he or she intentionally obstructs, impairs, or hinders the enforcement of the penal law by a peace officer acting under color of his or her official authority. See Neb. Rev. Stat. § 28-906 (Reissue 2016). The mere act of running away from law enforcement officers constitutes physical interference or obstacle within the meaning of this provision. *In re Interest of Richter*, 226 Neb. 874, 415 N.W.2d 476 (1987).

Here, police conducted a traffic stop on the vehicle in which Valdez was a passenger because he had warrants out for his arrest. Thus, the officers were engaged in the act of enforcing

the law. When the CI pulled her vehicle over, Valdez exited the vehicle and began running away from the officers, jumping over two fences in the process. Thus, he used physical interference or obstacle to intentionally obstruct, impair, or hinder the officers' enforcement of the law. The evidence was therefore sufficient to satisfy the elements of this offense.

*Ineffective Assistance of Counsel.*

Valdez is represented in this direct appeal by different counsel than the counsel who represented him at the trial level. When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record. Otherwise the issue will be procedurally barred. *State v. Casares*, 291 Neb. 150, 864 N.W.2d 667 (2015).

To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that counsel's performance was deficient and that this deficient performance actually prejudiced his or her defense. *State v. Casares, supra*. A claim of ineffective assistance of counsel need not be dismissed merely because it is made on direct appeal. *Id*. The determining factor is whether the record is sufficient to adequately review the question. *Id*. When the claim is raised in a direct appeal, the appellant is not required to allege prejudice; however, an appellant must make specific allegations of the conduct that he or she claims constitutes deficient performance by trial counsel. *Id*. General allegations that trial counsel performed deficiently or that trial counsel was ineffective are insufficient to raise an ineffective assistance claim on direct appeal and thereby preserve the issue for later review. *Id*.

Appellate courts have generally reached ineffective assistance of counsel claims on direct appeal only in those instances where it was clear from the record that such claims were without merit or in the rare case where trial counsel's error was so egregious and resulted in such a high level of prejudice that no tactic or strategy could overcome the effect of the error, which effect was a fundamentally unfair trial. *Id*. An ineffective assistance of counsel claim made on direct appeal can be found to be without merit if the record establishes that trial counsel's performance was not deficient or that the appellant could not establish prejudice. *Id*.

Valdez asserts that his trial counsel was ineffective in three respects. First, he argues that trial counsel was ineffective because he made "insufficient contact" with Valdez while Valdez was incarcerated awaiting trial. Brief for appellant at 23. We conclude that the record on direct appeal is not sufficient to address this claim because it does not contain any information regarding the contact, or lack thereof, between trial counsel and Valdez prior to trial.

Valdez additionally claims that trial counsel was ineffective because he failed to deliver discovery materials to Valdez so that Valdez could assist trial counsel in preparing his defense. The record does not show whether Valdez' counsel shared discovery materials with him, and the record is therefore insufficient to review this claim on direct appeal. See *State v. Casares*, 291 Neb. 150, 864 N.W.2d 667 (2015) (record on direct appeal insufficient to review ineffective assistance of counsel claim where it did not show whether defendant's counsel reviewed discovery with him).

Finally, Valdez asserts that trial counsel was ineffective when he failed to timely move for directed verdict at the close of his evidence. In a criminal case, a court can direct a verdict only when there is a complete failure of evidence to establish an essential element of the crime charged or the evidence is so doubtful in character, lacking probative value, that a finding of guilt based on such evidence cannot be sustained. *State v. Duncan*, 293 Neb. 359, 878 N.W.2d 363 (2016). If there is any evidence which will sustain a finding for the party against whom a motion for directed verdict is made, the case may not be decided as a matter of law, and a verdict may not be directed. *Id*.

In the present case, we note that Valdez' trial counsel moved for directed verdict after the State's case in chief. He argued that the evidence was insufficient because no one was able to see him clearly in order to place him with the gun. The court denied the motion, and Valdez presented evidence in the form of one witness who testified regarding the personal property collected from Valdez when he was booked into the detention facility. Thus, a new motion for directed verdict at the close of all evidence would not have resulted in a different outcome. And, as we determined above, the evidence was sufficient such that a jury could find the elements of the offenses beyond a reasonable doubt. Therefore, trial counsel was not ineffective in failing to move for a directed verdict at the close of evidence because the motion would not have been successful. See *State v. Collins*, 299 Neb. 160, 907 N.W.2d 721 (2018) (as matter of law, counsel cannot be ineffective for failing to raise meritless argument).

*Excessive Sentences.*

Valdez also assigns that the district court abused its discretion by imposing excessive sentences. He does not allege that the sentences fall outside the statutory limits; rather, he argues generally that the sentences constitute an abuse of the court's discretion. We disagree.

Possession of a firearm by a prohibited person is a Class ID felony. § 28-1206(3)(b). A Class ID felony carries a mandatory minimum sentence of 3 years' imprisonment up to a maximum of 50 years' imprisonment. Neb. Rev. Stat. § 28-105 (Reissue 2016). Valdez was sentenced to 8 to 10 years in prison for this crime.

Possession of meth is a Class IV felony. § 28-416(3). Class IV felonies are generally punishable by up to 2 years' imprisonment and 12 months' postrelease supervision. § 28-105. Because Valdez was sentenced to imprisonment for a Class IV felony consecutive to a term of imprisonment for a Class ID felony, however, he was not subject to postrelease supervision. See § 28-105(6). Valdez' sentence was 2 to 2 years' imprisonment.

Obstructing a peace officer is a Class I misdemeanor. § 42-906(3). Class I misdemeanors are punishable by up to 1 year's incarceration. Neb. Rev. Stat. § 28-106 (Reissue 2016). Valdez received a sentence of 1 to 1 year's incarceration.

Generally, a trial court has discretion to direct that sentences imposed for separate crimes be served either concurrently or consecutively even when offenses carry a mandatory minimum sentence, unless the statute requires consecutive sentences. See *State v. Stone*, 298 Neb. 53, 902 N.W.2d 197 (2017). Accordingly, Valdez' sentences come within the statutory limits, and the district court acted within its discretion in ordering the sentences to run consecutive to one another.

Where a sentence imposed within the statutory limits is alleged on appeal to be excessive, the appellate court must determine whether the sentencing court abused its discretion in considering and applying the relevant factors as well as any applicable legal principles in determining the sentence to be imposed. *State v. Chacon*, 296 Neb. 203, 894 N.W.2d 238 (2017). When imposing a sentence, the sentencing judge should consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the violence involved in the commission of the offense. *Id*. The sentencing court is not limited to any mathematically applied set of factors. *Id*. The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life. *Id*.

Valdez was 29 years old at the time of sentencing. He has a lengthy criminal history that includes numerous violent crimes and weapons offenses. His juvenile record began when he was 11 years old and includes charges for disorderly conduct, assault, trespass, truancy, and assault by mutual consent. He was placed on probation three times as a juvenile. His adult record includes convictions for possession of drug paraphernalia, possession of marijuana 1 ounce or less, third degree assault (amended from terroristic threats), disorderly conduct, possession of marijuana less than 2 ounces, third degree assault (amended from second degree assault--intentional), criminal mischief, attempt of a Class I misdemeanor (amended from third degree domestic assault), failure to appear, third degree assault (amended from assault--cause bodily injury), terroristic threats, driving under suspension, third degree domestic assault (assault--cause bodily injury), possession of meth, robbery, use of a deadly weapon to commit a felony, and possession of a deadly weapon by a prohibited person. Subsequent to the current offenses, Valdez was charged with possession of a firearm by a prohibited person and possession of a stolen firearm and, in a separate case, possession of a firearm by a prohibited person. At the time of the present offenses he was serving 3 years' probation for the possession of meth charge. As noted above, Valdez' trial counsel was appointed to represent him in three other criminal matters pending at the same time as this case.

The presentence investigation report does not include the results of assessments which are typically conducted because of Valdez' unwillingness to discuss certain topics during his presentence interview. Additionally, although Valdez requested a mental health evaluation, when the mental health therapist attempted to complete the evaluation, Valdez became uncooperative and the evaluation could not be completed.

The court made clear at sentencing that it considered the statutorily required factors, including mitigating factors such as the lack of violence involved in the present offenses. Based on the record before us, we cannot find that the sentences imposed constitute an abuse of discretion.

CONCLUSION

We conclude that the record before us is insufficient to address two of the ineffective assistance of counsel claims raised on direct appeal. Finding no merit to the remaining arguments, we affirm the convictions and sentences.

AFFIRMED.