IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. ALHAKEMI

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

ALI ALHAKEMI, APPELLANT.

Filed September 29, 2015.    No. A-14-723.

Appeal from the District Court for Lancaster County: STEVEN D. BURNS, Judge. Affirmed.

Matthew K. Kosmicki for appellant.

Douglas J. Peterson, Attorney General, and George R. Love for appellee.

IRWIN, INBODY, and RIEDMANN, Judges.

RIEDMANN, Judge.

## INTRODUCTION

Ali Alhakemi appeals from his convictions in the Lancaster County District Court of 4 counts of delivery of a controlled substance and 1 count of possession of a controlled substance. He argues that the evidence was insufficient to sustain the convictions, that his sentence is erroneous and excessive, and that he received ineffective assistance of counsel. We find that the record is insufficient to address the ineffective assistance of counsel claims and find no merit to the remaining claims. We therefore affirm the convictions and sentences.

## BACKGROUND

Alhakemi was charged with 4 counts of delivery of a controlled substance and 1 count of possession of a controlled substance. The information alleged that Alhakemi delivered methamphetamine on or about 4 separate dates in 2013, May 15, May 28, June 13, and July 5, and

that he possessed methamphetamine on or about August 8. It also alleged that Alhakemi is a habitual criminal.

At trial, the jury heard testimony from Jordan Wilmes, an investigator with the Lincoln-Lancaster County narcotics task force. On May 14, 2013, Wilmes met with a confidential informant (CI) who provided Wilmes the name and telephone number of a person the CI described as a source of methamphetamine in Lincoln. Wilmes researched the telephone number in a police database and confirmed the name associated with the telephone number was Alhakemi's. The CI also informed Wilmes that the methamphetamine source lived in the area of 12th Street and B Street in Lincoln, and Wilmes' research confirmed an address in that area for Alhakemi.

At Wilmes' request, the CI placed a recorded call to the telephone number he provided to Wilmes. A copy of the recorded call was received into evidence at trial, and Wilmes confirmed that the voices that could be heard on the recording belonged to the CI and a man he came to know as Alhakemi. Wilmes testified that he recognized, based on his training and experience, that the conversation between the CI and Alhakemi was consistent with the arrangement of a narcotics transaction.

The following day, the CI placed another recorded call to Alhakemi, and they arranged to meet. When the CI and Wilmes, who was working undercover, arrived at the agreed-upon location, Alhakemi got into the backseat of Wilmes' undercover vehicle. Alhakemi directed Wilmes to drive to a different location, at which Alhakemi exited the vehicle. About 15 minutes later, Alhakemi returned to Wilmes' vehicle and placed a plastic baggie containing a crystalline substance on the center console. The parties discussed a price, and Alhakemi was given $260 of drug task force buy money. Wilmes explained at trial that the drug task force provides him "buy money" for his undercover drug transactions, and the serial numbers of the buy money are recorded so that the money can later be identified during drug investigations.

Subsequent testing confirmed that the baggie that Alhakemi sold to Wilmes contained methamphetamine. Three other narcotics task force officers who were providing surveillance of the transaction testified that they observed Alhakemi exit and reenter Wilmes' vehicle.

On May 28, 2013, Wilmes made a recorded call to Alhakemi, and they agreed to meet so Wilmes could buy what Wilmes referred to in the call as "tickets," which Wilmes explained at trial meant methamphetamine. At the agreed-upon location, Alhakemi got into Wilmes' vehicle and gave Wilmes a clear plastic baggie containing a crystalline substance later determined to be methamphetamine. In exchange, Wilmes gave Alhakemi $280. Two other drug task force officers testified at trial that they observed Alhakemi enter and exit Wilmes' vehicle on that date.

Wilmes next spoke with Alhakemi on June 13, 2013, and they agreed to meet again so that Wilmes could purchase methamphetamine. At the agreed-upon location, Alhakemi got into Wilmes' vehicle, and after confirming that Wilmes wanted "a ball," which means one-eighth of an ounce of methamphetamine, Alhakemi gave Wilmes a clear plastic baggie containing suspected methamphetamine. Wilmes then gave Alhakemi $250. The contents of the baggie later tested positive for methamphetamine. Two other task force officers providing surveillance for the transaction testified at trial that they observed Alhakemi walking in the area at the time of the transaction.

Wilmes spoke with Alhakemi again on July 5, 2013, and they arranged to meet so that Wilmes could purchase methamphetamine. When Wilmes arrived, Alhakemi motioned for him to

get into Alhakemi's vehicle, and Wilmes did so. Alhakemi again provided Wilmes a small, clear baggie containing methamphetamine, and Wilmes paid him $250.

Wilmes met with Alhakemi for the final time on August 8, 2013. They arranged to meet via text messages and a phone conversation so that Wilmes could purchase one-eighth of an ounce of methamphetamine. At the agreed-upon location, Alhakemi got into Wilmes' vehicle, they discussed methamphetamine, and Alhakemi provided a baggie of methamphetamine to Wilmes in exchange for $260.

Alhakemi was arrested later that day, and although Wilmes did not participate in the arrest, he was able to observe it. The task force officer who assisted in arresting Alhakemi testified that at the time of the arrest, Alhakemi had an additional quantity of methamphetamine in his pocket as well as $257 in cash that matched the documented drug task force buy money that Wilmes had given him earlier that day. Alhakemi was interviewed after he was arrested and admitted that he had been selling methamphetamine for several months. He also described providing methamphetamine regularly to a white male with long hair named "Jay." The description matched the appearance and name Wilmes used when working undercover.

Wilmes identified Alhakemi in court as the man who had sold him methamphetamine on 5 occasions. Wilmes also confirmed that all of the events he described occurred in Lancaster County.

Alhakemi testified on his own behalf at trial. He admitted that he began using methamphetamine in 2005 and was using it almost daily at the time of the charged offenses. He admitted to meeting with Wilmes but claimed that Wilmes and the CI only gave him a ride. He denied providing methamphetamine to Wilmes or accepting any money from him. He also denied that it was his voice on the recorded phone calls.

The jury found Alhakemi guilty on all 5 counts. A habitual criminal enhancement hearing was held prior to sentencing. Upon receipt of the State's evidence, the district court found that Alhakemi is a habitual criminal, and thus, his sentences for all 5 counts should be enhanced pursuant to Nebraska statute. Alhakemi was sentenced to 10 to 12 years' imprisonment for each count with all sentences to be served consecutively. He received credit for 174 days served. He now appeals to this court.

## ASSIGNMENTS OF ERROR

Alhakemi assigns that the district court erred in (1) finding sufficient evidence to support the convictions, (2) ordering that the sentences be served consecutively, and (3) imposing an excessive sentence. He also assigns that he received ineffective assistance of trial counsel.

## STANDARD OF REVIEW

In reviewing a criminal conviction for a sufficiency of the evidence claim, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact. *State v. Escamilla*, 291 Neb. 181, 864 N.W.2d 376 (2015). The relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.*

An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court. *State v. Casares*, 291 Neb. 150, 864 N.W.2d 667 (2015).

ANALYSIS

*Sufficiency of Evidence.*

Alhakemi asserts that the evidence was insufficient to support his convictions. He argues that no photographs of the transactions were presented to the jury and that the quality of the audio recordings is so poor that the jury could not identify his voice. He further notes that the baggies containing methamphetamine were never tested for fingerprints. We reject Alhakemi's arguments and find that the State adduced sufficient evidence so that a rational jury could have found all elements of the offenses beyond a reasonable doubt.

Alhakemi was convicted of 4 counts of delivering a controlled substance. Under Neb. Rev. Stat. § 28-416(1) (Supp. 2013), it is unlawful for any person to knowingly or intentionally deliver a controlled substance. Deliver or delivery means the actual, constructive, or attempted transfer from one person to another of a controlled substance, whether or not there is an agency relationship. Neb. Rev. Stat. § 28-401(12) (Supp. 2013). Methamphetamine is a controlled substance. See Neb. Rev. Stat. § 28-405 (Supp. 2013).

Alhakemi was also convicted of 1 count of possession of a controlled substance. To prove a person guilty of possession of a controlled substance, the State must prove that the person knowingly or intentionally possessed a controlled substance. Neb. Rev. Stat. § 28-416(3) (Supp. 2013). A person possesses a controlled substance when he knows of the nature or character of the substance and of its presence and has dominion or control over it. *State v. Howard*, 282 Neb. 352, 803 N.W.2d 450 (2011).

Alhakemi's arguments on appeal are entirely challenges to the credibility of the witnesses, which it is well-established that we will not reweigh or pass on. Viewed in the light most favorable to the State, the evidence indicates that Alhakemi sold methamphetamine to Wilmes on the 4 dates charged in the information and that he had methamphetamine on his person at the time of his arrest. Alhakemi admitted to selling methamphetamine, including selling it to a man matching Wilmes' description.

Viewed in the light most favorable to the State, the testimony of Wilmes and the arresting officer satisfies all of the statutory elements necessary to sustain the convictions. The jury found this testimony credible, a finding we do not reweigh on appeal. We therefore cannot say that no rational trier of fact could have found the elements proven beyond a reasonable doubt. This assignment of error is meritless.

*Consecutive Sentences.*

Alhakemi asserts that the district court erred in ordering that his sentences be served consecutively. He acknowledges that the record is unclear as to whether the district court believed it was required to sentence him consecutively, but he points out that the State argued that was, in fact, the requirement, and the district court did not correct the State's incorrect argument. We disagree and find no abuse of discretion in the court's decision to order Alhakemi's sentences to run consecutively.

Generally, it is within a trial court's discretion to direct that sentences imposed for separate crimes be served either concurrently or consecutively. *State v. Lantz*, 290 Neb. 757, 763, 861 N.W.2d 728, 732 (2015). In Nebraska, unless prohibited by statute or unless the sentencing court states otherwise when it pronounces the sentences, multiple sentences imposed at the same time run concurrently with each other. *Id*. The Supreme Court recently clarified that not all convictions carrying a mandatory minimum sentence, including enhancements under the habitual criminal statute, must be served consecutively to all other sentences. See *State v. Lantz, supra*; *State v. Berney*, 288 Neb. 377, 847 N.W.2d 732 (2014). Rather, a court is required to order consecutive sentences only for those specific crimes that require a mandatory minimum sentence to be served consecutively to other sentences imposed. *State v. Lantz, supra*. If the conviction requires only a mandatory minimum sentence but the statute does not mandate that the minimum sentence run consecutively to other sentences, the decision as to whether to run the sentences consecutively or concurrently is left to the sentencing court. See *id*.

In the present case, because methamphetamine is an exceptionally hazardous drug, delivery of methamphetamine is a Class II felony. See Neb. Rev. Stat. §§ 28-401(28) (Supp. 2013); 28-416(2)(a) (Supp. 2013). Class II felonies are punishable by 1 to 50 years imprisonment. Neb. Rev. Stat. § 28-105 (Cum. Supp. 2014). Possession of methamphetamine is a Class IV felony, punishable by up to 5 years imprisonment. Neb. Rev. Stat. §§ 28-105; 28-416(3). The crimes were enhanced under the habitual criminal statute, which provides that each crime enhanced under that statute carries a mandatory minimum sentence of 10 years. See Neb. Rev. Stat. § 29-2221(1) (Reissue 2008). Thus, because none of the applicable statutes requires consecutive sentences, the district court had the discretion to order the sentences to run consecutively or concurrently.

Contrary to Alhakemi's arguments, we find nothing in the record indicating that the district court was under the mistaken impression that it was, in fact, required to order consecutive sentences. As Alhakemi points out, the State raised the issue of consecutive sentences during a pretrial hearing. That hearing occurred on May 8, 2014 and the State informed the court of a plea agreement it had offered, but which Alhakemi had rejected. The State advised the court "that it is the State's position that if convicted on more than one count, each count would have to be served consecutively under State versus Castillas."

At sentencing on July 24, 2014, the State asked that the habitual criminal enhancement allegation apply to all 5 counts of the information and requested "that the mandatory minimum sentence would apply to all five counts." In response, the defense stated that it thought "the court [sic] can ask to give Mr. Alhakemi 10 years, and it could make all the charges concurrent based on my reading of the case law." The State requested "an extremely lengthy sentence" while defense counsel asked that the court impose "the minimum sentence, which is 10 years."

In pronouncing its sentence, the court stated:

> . . . it is the judgment and sentence of this court with regard to each of the [5] counts that the defendant should be and hereby is ordered imprisoned in an institution under the jurisdiction of the Nebraska Department of Correctional Services for a period of not less than 10 years nor more than 12 years, no part of which would be in solitary confinement except for violation of prison rules.

The defendant is not eligible for parole and must serve 10 years actual time with no credit for any good time. If the defendant retains all of his good time, he'll be eligible for mandatory discharge after serving 11 years on each of the [5] counts.

The sentence I'm imposing here is ordered to be served on each of these [5] counts consecutively.

Although the sentences were ordered to be served consecutively, the court did not express a belief that it was required to do so. Moreover, the Supreme Court had clarified the law with respect to required consecutive sentences prior to Alhakemi's sentencing hearing, which was held on July 24, 2014. On June 20, 2014, the Supreme Court released its opinion in *State v. Berney*, 288 Neb. 377, 847 N.W.2d 732 (2014). In *Berney*, the Supreme Court distinguished between a conviction for a crime that requires both a mandatory minimum sentence and mandates consecutive sentences, and the enhancement of a penalty for a crime because the defendant is a habitual criminal. See *id*. The court stated, "In the latter, the law does not require the enhanced penalty to be served consecutively to any other sentence imposed. The sentence is left to the discretion of the court." *Id*. at 383, 847 N.W.2d at 736. Thus, the sentencing law was clarified at the time of Alhakemi's sentencing to mean enhancement sentences were not required to be consecutive.

We therefore conclude there is insufficient evidence in the record to find that the district court erroneously believed Alhakemi's sentences must be served consecutively. Because it was within the court's discretion to so order, however, we find no abuse of discretion in the sentences.

*Excessive Sentences.*

Alhakemi also argues that the sentences he received are excessive. He asserts that the trial court failed to properly consider the mitigating factors present, including his age, immaturity, and admitted methamphetamine addiction. We find no abuse of discretion in Alhakemi's sentences.

As indicated above, Alhakemi's sentences fall within the statutory limits for the habitual criminal enhancement. The district court indicated that it considered the information contained in the presentence investigation report, the comments made at sentencing, and the statutorily required factors. Alhakemi spoke on his own behalf at sentencing, informing the court of his history, his addiction to methamphetamine, and his family situation.

Alhakemi was 50 years old at the time of sentencing. He began using methamphetamine in 2005 and was a daily user at the time of his arrest. He has several prior convictions for possession of methamphetamine and possession with intent to deliver methamphetamine for which he was incarcerated. The current offenses occurred while he was on parole and remained under the supervision of the Department of Correctional Services. Alhakemi was placed on probation in 2003 for methamphetamine-related offenses, but his probation was ultimately revoked. Because the district court considered the appropriate factors and the sentences fall within the statutory limits, we conclude that the sentences imposed are not an abuse of discretion.

*Ineffective Assistance of Counsel.*

Alhakemi claims he received ineffective assistance of trial counsel when counsel failed to utilize an Arabic interpreter for all communications with Alhakemi, which impacted his ability to

fully understand and appreciate every facet of his case. Alhakemi also asserts that trial counsel was ineffective in failing to properly advise him of the evidence against him so that he could make an informed decision regarding the plea agreement offered by the State.

Claims of ineffective assistance of counsel raised for the first time on direct appeal do not require dismissal ipso facto; the determining factor is whether the record is sufficient to adequately review the question. *State v. Ortega*, 290 Neb. 172, 859 N.W.2d 305 (2015). Whether a claim of ineffective assistance of trial counsel may be determined on direct appeal is a question of law. *State v. Abdullah*, 289 Neb. 123, 853 N.W.2d 858 (2014). In reviewing claims of ineffective assistance of counsel on direct appeal, an appellate court decides only questions of law: Are the undisputed facts contained within the record sufficient to conclusively determine whether counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance? *State v. Castillo-Zamora*, 289 Neb. 382, 855 N.W.2d 14 (2014).

Appellate courts have generally reached ineffective assistance of counsel claims on direct appeal only in those instances where it was clear from the record that such claims were without merit or in the rare case where trial counsel's error was so egregious and resulted in such a high level of prejudice that no tactic or strategy could overcome the effect of the error, which effect was a fundamentally unfair trial. *State v. Casares*, 291 Neb. 150, 864 N.W.2d 667 (2015).

In the present case, with respect to Alhakemi's first claim, we initially note that Alhakemi has been in the United States for 21 years. Most of his interactions during the case were in English, and there is no evidence he was unable to understand. An Arabic translator was present during trial, but on occasion, Alhakemi communicated directly with the court without using the interpreter's services. Further, Wilmes testified that all of his conversations with Alhakemi occurred in English, and it never appeared that Alhakemi had difficulty understanding or speaking English. However, we conclude that the record is insufficient to address this claim because the record before us does not contain the contents of Alhakemi's communications with trial counsel from which we can evaluate whether Alhakemi asked for an interpreter or expressed confusion as to his case.

Likewise, we find the record insufficient to address Alhakemi's second claim because, again, the record on direct appeal does not contain the contents of communications between Alhakemi and trial counsel. We therefore cannot address the merits of this assigned error.

## CONCLUSION

We find that the evidence is sufficient to sustain the convictions and that the sentences imposed were not improper or excessive. We also find that the record is insufficient to address the ineffective assistance of counsel claims. We therefore affirm.

AFFIRMED.