IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. MCKEAN

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

CLINTON D. MCKEAN, APPELLANT.

Filed January 19, 2016.   No. A-15-348.

Appeal from the District Court for Buffalo County: JOHN P. ICENOGLE, Judge. Affirmed.

Tana M. Fye, of Law Offices of Tana M. Fye, for appellant.

Douglas J. Peterson, Attorney General, and Melissa R. Vincent for appellee.

PIRTLE, RIEDMANN, and BISHOP, Judges.

PIRTLE, Judge.

## INTRODUCTION

Clinton D. McKean appeals from an order of the district court for Buffalo County finding that he violated a condition of his probation by testing positive for drugs. The district court revoked his probation, and sentenced him to 120 days in jail. Based on the reasons that follow, we affirm.

## BACKGROUND

On April 3, 2012, McKean was charged by information with possession of methamphetamine, a Class IV felony. Pursuant to an agreement with the State, McKean pled guilty to an amended information, which reduced the charge to attempted possession of methamphetamine, a Class I misdemeanor. On October 31, 2012, McKean was sentenced to one year of probation and ordered to pay a $500 fine.

On October 30, 2013, the State filed a motion seeking to revoke McKean's probation, alleging he had violated certain conditions of his probation order. McKean denied the allegations and subsequently reached an agreement with the State whereby he admitted to violating one condition of his probation order, and the State recommended that his probation be revoked but that he be re-placed on probation for another six months. Following a hearing on February 4, 2014, the trial court accepted the agreement, revoked McKean's probation, and sentenced him to an additional six months of probation.

On June 2, 2014, the State filed another motion seeking revocation of McKean's probation, alleging that he had violated a condition of his probation order by testing positive for methamphetamine on April 7 and 28, 2014. On August 5, Jeri Swanson, McKean's probation officer at that time, filed a Supplemental Alleged Probation Violation in which she alleged McKean had tested positive for both methamphetamine and amphetamines on four separate occasions between May 16 and June 25, 2014. McKean denied the allegations and the trial court scheduled an evidentiary hearing.

On August 21, 2014, McKean filed a motion for discovery including a request for disclosure by the State of any test results that were material to the prosecution. On September 22, 2014, he filed a "Motion to Produce for Independent Testing" seeking to have the urine samples produced for independent testing by a laboratory chosen by McKean. Both motions were granted. The order to produce directed that urine samples collected on April 7, April 28, June 23, June 25, and July 9 be produced for independent testing.

On November 19, 2014, McKean filed a motion to continue the hearing date because the urine samples had not yet been received by the lab he had chosen. The trial court granted the motion. On December 9, the trial court entered a second order directing the State to send McKean's urine samples to the independent lab for testing. The second order, unlike the first, included an "accession number" for each requested sample. The need for the second order to produce arose when the State and McKean were informed that the lab used by the State to test the samples required that each sample be identified by a specific "accession number," rather than being identified by date. The State ultimately did not produce the samples because they were destroyed by the lab.

An evidentiary hearing was held on January 21, 2015. Two employees from the Nebraska Probation Office, Jeri Swanson and Randall Sawyer, testified regarding the results of McKean's drug tests on April 7 and 28, 2014. Swanson, McKean's probation officer, testified that McKean's probation order prohibited consumption of or possession of non-prescribed controlled substances, and required him to submit to random drug testing. Swanson explained that when McKean reports for drug testing, he provides a urine sample in a special cup that has chemical testing strips in it that reacts to substances in his urine. According to Swanson, McKean provided urine samples on April 7 and 28, 2014, which tested presumptively positive for amphetamine and methamphetamine, both prohibited substances for consumption pursuant to McKean's probation order. When confronted with the results, McKean denied using drugs and requested that both samples be retested. Swanson testified that McKean's urine sample from April 28 was sent to Redwood Toxicology Laboratory, a company in California that contracts with the Nebraska Probation Office to provide drug testing. Redwood Toxicology tested McKean's urine sample and

confirmed the presence of methamphetamine. Swanson testified that Redwood Toxicology keeps a sample that has been tested for six months and then disposes of it.

On cross-examination, Swanson was questioned about his contact with Redwood Toxicology in regard to McKean's request that his urine samples be produced for independent testing. Swanson became aware of McKean's request in late September 2014, and received a copy of the court's order to produce on October 3. Because Swanson had never dealt with such a request, she consulted her supervisor, Karen Huber. Swanson testified that Huber assisted her in notifying Redwood Toxicology of the court's order to produce. Swanson received confirmation from Redwood Toxicology that her request had been received. She subsequently learned that McKean had moved to continue this revocation hearing because the urine samples had not been received by the independent lab. Thereafter, Huber contacted Redwood Toxicology to inquire about McKean's urine samples and found out that Redwood Toxicology requires specimen accession numbers to be included with the request. On December 3, 2014, Huber sent an email to the State's attorney informing him that Redwood Toxicology needed a court order with the specimen accession numbers, which Huber included in the email. The email also noted that Redwood Toxicology only maintains positive tests for a six month period, so the specimens from April and May will have been discarded.

Randall Sawyer testified that he collected urine samples from McKean on several dates, including April 7 and 28, 2014. He explained that the urine was collected in a "five-panel cup," which tests for five different types of drugs. Sawyer testified that the samples from April 7 and April 28 both tested positive for methamphetamine and amphetamine. He testified that the samples were then sent to a lab for a confirmatory test. The April 7 sample was sent to the State Probation Lab, and the April 28 sample was sent to Redwood Toxicology. Sawyer testified that he received test results from both labs indicating McKean's urine tested positive for methamphetamine.

On cross-examination, Sawyer explained that he receives test results from the State lab by fax, while Redwood provides test results via a secure website. Sawyer further testified that he records the test results in the computer system and then forwards the results to the supervising probation officer. Sawyer also testified that some over the counter and prescription medications can cause a false positive result in the five-panel cup urine test. He further testified that the possibility of a false positive result is the reason a probationer can request to have a sample retested.

At the conclusion of the State's case, McKean moved to dismiss the motion to revoke his probation or in the alternative, to exclude the testimony concerning the test results because the State had not provided the lab report from the urine test on April 7 as required by the court's discovery order, and the State had failed to preserve the urine samples for independent testing. The trial court took the motion under advisement. McKean did not present any evidence, and renewed his motion.

On February 20, 2015, the trial court entered an order overruling McKean's motion to dismiss or in the alternative, suppressing the test results from evidence. The court found the discovery rules were inapplicable to revocation proceedings and that McKean had been given notice of the evidence that would be offered against him at the hearing.

The court further found that the State had proven by clear and convincing evidence that McKean violated his probation order. The court stated that the results from the presumptive urine

tests, coupled with the results from the confirmatory tests performed by the lab, were sufficient to show McKean used methamphetamine. Although the trial court acknowledged the confirmatory test results from the lab were hearsay, it noted that hearsay is admissible in a probation revocation hearing and found that such hearsay was reliable. On April 9, the trial court sentenced McKean to 120 days in jail.

## ASSIGNMENTS OF ERROR

McKean assigns that the trial court erred in (1) finding that the evidence was sufficient to find that he violated his probation, (2) considering the Supplemental Alleged Probation Violation as evidence to revoke his probation, (3) relying upon "presumptive positive" test results in the proceedings to revoke his probation, (4) denying his motion to suppress or exclude evidence, (5) denying his motion to dismiss the probation revocation proceedings, and (6) imposing an excessive sentence.

## STANDARD OF REVIEW

The revocation of probation is a matter entrusted to the discretion of the trial court. *State v. Johnson*, 287 Neb. 190, 842 N.W.2d 63 (2014). A judicial abuse of discretion exists only when the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying a just result in matters submitted for disposition. *Id.*

An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court. *State v. Casares*, 291 Neb. 150, 864 N.W.2d 667 (2015).

## ANALYSIS

*Sufficiency of Evidence.*

McKean's first three assignments of error all relate to the sufficiency of the evidence to revoke his probation. While the revocation of probation is a matter entrusted to the discretion of a trial court, unless the probationer admits to a violation of a condition of probation, the State must prove the violation by clear and convincing evidence. *State v. Johnson*, 287 Neb. 190, 842 N.W.2d 63 (2014). See also Neb. Rev. Stat. § 29-2267 (Reissue 2008). Clear and convincing evidence means that amount of evidence which produces in the trier of fact a firm belief or conviction about the existence of a fact to be proved. *State v. Johnson, supra.*

We first address McKean's argument that the trial court improperly considered the Supplemental Alleged Probation Violation filed by the State in concluding that McKean violated his probation. The supplemental filing alleged that McKean tested positive for drugs on May 16, May 22, June 23, and June 25, 2014, and that those samples were sent to Redwood Toxicology and confirmed as being positive for methamphetamines and amphetamines. McKean contends it was error for the court to rely on mere allegations by the State as evidence in the matter. McKean further contends that the Supplemental Alleged Probation Violation contained allegations not included in the Motion to Revoke Probation and he was not put on notice that such matters would be the subject of the evidentiary hearing.

Although the additional violations set forth in the Supplemental Alleged Probation Violation were not included in the Motion to Revoke Probation, the supplemental document was filed with the court well before the hearing occurred and the record shows that McKean was aware

of the additional allegations. In fact, McKean's Motion to Produce for Independent Drug Testing includes a request for the urine samples from June 23 and June 25, 2014. Further, the trial court only relied on the additional test results in determining the weight to be given the confirmatory test results from the samples provided in April 2014, which the court noted were hearsay. It was not improper for the court to consider the allegations in the Supplemental Alleged Probation Violation in concluding that McKean violated his probation.

McKean next argues that the trial court erred in relying on the "presumptively positive" urine test results from April 7 and April 28, 2014, in determining that he had violated his probation. Sawyer testified that McKean's April 7 and April 28, 2014 test results were "presumptively positive." Sawyer also testified that certain prescription and over the counter medications can result in false positive test results in the 5-panel cup. McKean points out that there was no evidence that anyone from the Probation Office asked him if he was taking any medication. However, there was also no evidence presented that McKean was taking any medication that could cause a false positive test result. More importantly, the urine samples from April 7 and April 28, 2014, were sent to a lab to confirm the initial results. The samples were both confirmed as testing positive for methamphetamine. Thus, the trial court did not rely exclusively on the presumptive tests in concluding McKean violated his probation. Rather, the court considered the confirmatory lab tests, which showed McKean's urine samples did contain methamphetamine. Any possibility that the initial urine test results from the 5-panel cup were falsely positive was eliminated by the lab tests.

McKean next argues that the evidence was insufficient to support his revocation of probation because the court allowed testimony about lab results without any foundation testimony from the lab technicians, the State did not offer the lab reports from the April 7 and 28, 2014 tests into evidence, and the State failed to preserve the urine samples for independent testing. However, the lab report regarding the April 28 urine sample was received into evidence, and Sawyer testified, without objection, about the lab report regarding the April 7 urine sample. Further, the fact that McKean was not able to subject the urine samples to further testing by a lab of his own choosing does not make the State's lab test results unreliable or insufficient to support a finding that McKean violated a condition of his probation.

We conclude that the evidence was sufficient to revoke his probation. Both Swanson and Sawyer testified, without objection, that McKean tested positive for methamphetamine on April 7 and 28, 2014, in violation of his probation order. Both test results were obtained using the same procedure--McKean first submitted a urine sample that tested presumptively positive for methamphetamine, and the State then sent both samples to a lab for further chemical analysis, which confirmed that methamphetamine was present in McKean's urine. The presumptive test results, coupled with the lab test results, were sufficient to show by clear and convincing evidence that McKean used methamphetamine in violation of his probation order. McKean's first three assignments of error are without merit.

*Denial of Motion to Dismiss and Motion to Suppress.*

McKean next assigns that the trial court erred in denying his motion to dismiss the probation revocation proceedings or in the alternative suppressing evidence of the April 7 and April 28, 2014, urine test results. He argues that evidence of the April 7 test results should have been suppressed because the State failed to disclose the lab report from the April 7 urine sample,

as it was required to do pursuant to the court's order granting McKean's discovery motion. McKean also argues that evidence of the April 7 and April 28 test results should have been suppressed because the State failed to preserve the urine samples from those dates despite the court's order to produce those samples for McKean. In support of his arguments that the court should have suppressed evidence of the test results, McKean relies on Neb. Rev. Stat. § 29-1919 (Reissue 2008), which provides that if a party fails to comply with the provisions of the discovery statutes found at Neb. Rev. Stat. §§ 29-1912 to 29-1921 (Reissue 2008), or an order issued pursuant to those sections, the court can prohibit the party from introducing into evidence the material not disclosed or enter such other order as it deems just under the circumstances.

However, as the trial court correctly found, the discovery statutes, §§ 29-1912 to 29-1921, do not apply to probation revocation proceedings. Those statutes pertain to the discovery allowed in preparing for trial in criminal cases, specifically "[w]hen a defendant is charged with a felony, or when a defendant is charged with a misdemeanor or a violation of a city or village ordinance for which imprisonment is a possible penalty." See § 29-1912; § 29-1913. McKean has already been convicted of attempted possession of methamphetamine and is not facing any new charges, only a motion to revoke his probation.

A motion to revoke probation is not a criminal proceeding. *State v. Schuetz*, 18 Neb. App. 658, 790 N.W.2d 726 (2010). The purpose of a probation revocation hearing is to determine whether a defendant has breached a condition of his existing probation, not to convict that individual of a new offense. See *id.* Because a probation revocation hearing is not part of a criminal prosecution, it does not give rise to the full panoply of rights that are due a defendant at a trial. See *State v. Schuetz*, 18 Neb. App. 658, 790 N.W.2d 726 (2010).

Neb. Rev. Stat. § 29-2267 (Reissue 2008) sets forth the applicable procedures for revoking probation and states in part: "[t]he probationer shall have the right to receive, prior to the hearing, a copy of the information or written notice of the grounds on which the information is based. The probationer shall have the right to hear and controvert the evidence against him, to offer evidence in his defense and to be represented by counsel."

Relying on U.S. Supreme Court cases, the Nebraska Supreme Court has also described the minimum due process protections required for a probation revocation hearing as follows:

> (1) written notice of the time and place of the hearing; (2) disclosure of evidence; (3) a neutral fact finding body or person, who should not be the officer directly involved in making recommendations; (4) opportunity to be heard in person and to present witnesses and documentary evidence; (5) the right to cross-examine adverse witnesses, unless the hearing officer determines that an informant would be subjected to risk of harm if his or her identity were disclosed or unless the officer otherwise " 'specifically finds good cause for not allowing confrontation' "; and (6) a written statement by the fact finder as to the evidence relied on and the reasons for revoking the conditional liberty. In addition, the parolee or probationer has a right to the assistance of counsel in some circumstances where the parolee's or probationer's version of a disputed issue can fairly be represented only by a trained advocate.

*State v. Johnson*, 287 Neb. 190, 199-200; 842 N.W.2d 63, 71 (2014).

Although the trial court ordered the State to disclose the lab report from the April 7, 2014 urine sample and produce the April 7 and April 28 urine samples, the discovery statutes are not applicable to a probation revocation hearing and McKean received the due process to which he was entitled, including the State disclosing the evidence that it would use at the time of the revocation hearing. We note that the State did not offer the lab report from the April 7 urine sample into evidence.

Further, there is no evidence that the State's failure to produce the April 7 and April 28, 2014 urine samples was the result of bad faith or neglectful behavior. The record shows that McKean's urine samples, which were several months old at the time he first requested their production, were destroyed pursuant to standard lab retention policies. In regard to the April 28 urine sample, the probation office forwarded the order to produce to Redwood Toxicology and received confirmation that it received the order. The probation office did not know that the accession numbers were required for the urine samples until after the April 28 sample had been destroyed.

We conclude that the trial court did not err in refusing to exclude evidence of the April 7 or April 28, 2014, test results from evidence, or in failing to grant McKean's motion to dismiss the probation revocation proceedings.

*Excessive Sentence.*

Finally, McKean argues that the trial court imposed an excessive sentence. An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court. *State v. Casares*, 291 Neb. 150, 864 N.W.2d 667 (2015). A judicial abuse of discretion exists only when the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying a just result in matters submitted for disposition. *State v. Johnson*, 287 Neb. 190, 842 N.W.2d 63 (2014).

Neb. Rev. Stat. § 29-2268 (Reissue 2008) authorizes a court, upon determining that a probationer has violated a condition of his probation, to "revoke the probation and impose on the offender such new sentence as might have been imposed originally for the crime of which he was convicted." McKean was convicted of attempted possession of methamphetamine, a Class I misdemeanor. See Neb. Rev. Stat. § 28-416(3) (Cum. Supp. 2014); Neb. Rev. Stat. § 28-201(e) (Cum. Supp. 2014). Statutory sentencing guidelines for a Class I misdemeanor provide for a maximum sentence of one year imprisonment, a $1,000 fine, or both. There is no minimum sentence. See Neb. Rev. Stat. § 28-106 (Cum. Supp. 2014). The sentence imposed by the trial court, 120 days in jail, was within the statutory limits.

When imposing a sentence, a sentencing judge should consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense, and (8) the violence involved in the commission of the crime. *State v. Casillas*, 279 Neb. 820, 782 N.W.2d 882 (2010). In imposing a sentence, the sentencing court is not limited to any mathematically applied set of factors. *Id.* The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life. *Id.*

The record shows that the trial court reviewed the supplemental presentence investigation report and considered the comments of counsel for both parties. McKean was initially charged with possession of methamphetamine and subsequently reached a favorable plea agreement with the State, resulting in the charge being reduced from a Class IV felony to a Class I misdemeanor. His probation had been previously revoked as a result of violating his probation and he again reached an agreement with the State, resulting in an additional six months of probation. In the present case, McKean violated his probation again and this time the court determined that a brief period of incarceration was warranted. However, the court also approved him for work release. Having reviewed the record, we conclude that the trial court's sentence was not an abuse of discretion.

## CONCLUSION

We conclude that the State proved by clear and convincing evidence that McKean violated a condition of his probation by testing positive for drugs and therefore, the trial court did not abuse its discretion in revoking his probation. We also conclude that the sentence ordered by the court was not excessive. Accordingly, the order of the trial court is affirmed.

AFFIRMED.