IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. HOUPT

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

MARK L. HOUPT, APPELLANT.

Filed August 4, 2020.    No. A-19-1074.

Appeal from the District Court for Butler County: CHRISTINA M. MARROQUIN, Judge. Affirmed.

Chad J. Wythers, of Wythers Law Firm, for appellant.

Douglas J. Peterson, Attorney General, and Matthew Lewis for appellee.

PIRTLE, BISHOP, and ARTERBURN, Judges.

ARTERBURN, Judge.

INTRODUCTION

Mark L. Houpt appeals his plea-based convictions for possession of a deadly weapon by a prohibited person, a Class III felony; possession of a controlled substance (amphetamine), a Class IV felony; and child abuse, a Class I misdemeanor. He assigns as error that his trial counsel provided ineffective assistance by failing to confirm the length of the knife which gave rise to Houpt's possession of a deadly weapon charge and by advising Houpt he would receive a sentence of probation if he agreed to plead no contest to the three charges. Upon our review, we find that Houpt was not provided with ineffective assistance and, accordingly, we affirm his convictions.

BACKGROUND

On August 19, 2019, the State filed an information charging Houpt with "possession of a deadly weapon by a felon," a Class III felony; possession of a controlled substance, a Class IV

felony; and child abuse, a Class I misdemeanor. The next day, both Houpt and the State appeared before the district court and indicated that they had reached a plea agreement. The State indicated that pursuant to the agreement, Houpt was to plead no contest to the charges alleged in the information. In exchange for Houpt's pleas, the State agreed not to "seek bindover" on two additional charges which had been filed against Houpt in county court. The State specifically indicated that the parties had made no agreement with regard to sentencing.

Upon the district court's inquiry, Houpt indicated that he agreed with the State's recitation of the terms of the plea agreement. He denied that, outside of the terms of the agreement, anyone had threatened him or made promises to him to compel him to plead no contest to the charges. In addition, he affirmed that he understood the charges and the possible penalties associated with each charge. He then indicated that he understood that the court was not bound by any specific sentencing recommendation. Houpt acknowledged an understanding of the constitutional rights he was waiving by pleading no contest. Houpt told the district court that he had informed his trial counsel of everything he knew about the case and believed that his counsel was competent in representing him.

The State provided a factual basis for Houpt's no contest pleas. According to that factual basis, on July 3, 2019, at approximately 5:20 in the morning, a Butler County Sheriff's Deputy was dispatched to an apartment building located in Rising City, Nebraska, regarding a report of a man and a woman standing outside yelling at each other. Upon the deputy's arrival to the building, he heard a male and a female yelling inside one of the apartments. When the deputy knocked on the door to the apartment and identified himself as a sheriff's deputy, Houpt barely opened the door in order to speak with him. Houpt told the deputy that his wife was not dressed. However, the deputy observed a clothed female, later identified as Houpt's significant other, Amber Lively, standing behind Houpt in the doorway. Lively told the deputy that she did not know where her baby was and that her baby had been outside sleeping in the car.

The deputy asked Lively to step outside of the apartment to speak with him. When she did, she spoke very rapidly and did not make sense. Houpt then came outside as well, explaining that the baby was fine and that the day before, someone had come into their apartment and taken their baby, placing her in the back seat of their car. The deputy placed Lively in his patrol car due to her erratic behavior. He then asked Houpt to see the couple's baby.

Houpt led the deputy to a small closet where the baby, who was then approximately 7 months old, was sleeping on the floor. The baby was lying on a pillow with blankets piled up around her. She was "wearing only a heavily soaked diaper." Also inside the small closet "within close proximity and accessible to the baby was a small cardboard box without a lid containing prescription pill bottles, several of which had no lids on them, and which contained pills. There were also numerous loose pills laying in the bottom of the box."

The deputy asked Houpt to clarify what happened to the baby the day before. Houpt stated that sometime before one in the morning on July 2, 2019, an unknown person entered Houpt's and Lively's apartment while they were sleeping in their room. The baby had been sleeping on the living room floor. The unknown person apparently took the baby and placed her on the back seat of Houpt's and Lively's car. When Houpt woke up at around 1 a.m. and went to his car to retrieve something, he heard a baby crying and found the baby lying in the back seat.

While the deputy was talking to Houpt, he asked Houpt if he had any weapons. Houpt removed a folding knife from his pants pocket. The knife blade "measured approximately 3 and 7/8 inches long." The deputy observed "small white crystal substances on the blade." The substances field tested positive for amphetamines. A subsequent records check revealed that Houpt is a convicted felon.

Houpt did not dispute the factual basis provided by the State. The court then found that a sufficient factual basis existed for Houpt's no contest pleas. The court also found that Houpt "understands his rights. He freely and voluntarily waives them. He understands the charges and the possible penalties and the consequences of his plea, and he's offering that plea freely, voluntarily, knowingly, and intelligently." The court accepted Houpt's pleas of no contest and adjudged him guilty of possession of a deadly weapon by a prohibited person, possession of a controlled substance, and child abuse. The court ordered a presentence report be completed.

The presentence report revealed that Houpt is 45 years old and has no formal education beyond a high school diploma. At the time of his arrest, he was unemployed, having recently had back surgery. Prior to his surgery, he was employed for 6 to 8 months at a local "Petro." He denied using any alcohol or controlled substances during the previous year.

Houpt has a significant criminal history, including, delivery, distribution, or manufacturing of a controlled substance; possession of a controlled substance; domestic assault (three times); violation of a protection order (five times); driving during suspension; attempted delivery, distribution, or manufacturing of a controlled substance; attempted possession of a controlled substance (three times); assault by mutual consent; theft by unlawful taking; theft by shoplifting (two times); disturbing the peace; and aiding and abetting a Class II misdemeanor. Because of his convictions, Houpt has previously been sentenced to a prison term of 2 to 6 years and to more than 15 separate jail sentences. He has been sentenced to three periods of probation. He satisfactorily finished one term of probation, unsatisfactorily finished another term, and his probation was revoked during the third term.

During his interview with the probation office, Houpt minimized his criminal history, asserting that his past should not define him. The presentence report indicated that Houpt's most recent conviction prior to the current one was in the latter part of 2018. Additionally, the report indicates that after that conviction, Houpt had been arrested in both January and February 2019.

Houpt also minimized his actions in the current offense. Houpt denied that any disturbance had occurred between he and Lively which would have precipitated police involvement. He also explained that the baby was sleeping in the closet only because he had just moved and was still unpacking boxes. He argued that he had a prescription for the amphetamines. Finally, he claimed that he did not know that his knife was illegal. Testing completed by the probation office revealed that Houpt posed a "very high" risk of reoffense. A sentence of probation was not recommended.

At the sentencing hearing, the State indicated that it was asking for Houpt to serve a period of incarceration for "a maximum sentence or close thereto." The State did not believe, given the current charges and Houpt's lengthy criminal history, that Houpt was a proper candidate for probation. Houpt's trial counsel appeared to agree with the State that Houpt was not a candidate for probation. During counsel's comments to the court, he specifically indicated that Houpt was not asking for probation. Counsel reiterated, "I think in this situation I don't know that probation

is appropriate." Instead, counsel asked that Houpt be sentenced to a "jail sentence" of around 6 months, rather than to any time in prison. Houpt was also given a chance to address the court regarding his sentence. Houpt stated as follows: "I just want to say that I got a new life, and a new wife, and a new baby, so you know . . . I don't live like I used to."

Ultimately, the court sentenced Houpt to 3 years' imprisonment and 24 months' postrelease supervision for his conviction for possession of a deadly weapon by a prohibited person; to 2 years' imprisonment and 12 months' postrelease supervision for his conviction for possession of a controlled substance; and to 1 year's imprisonment for his conviction for child abuse. The court ordered the sentences to run concurrently to each other. When the court ordered Houpt remanded to the custody of the sheriff for immediate transport to the Department of Correctional Services, Houpt responded, "Yee-haw."

Houpt appeals from his convictions here.

## ASSIGNMENTS OF ERROR

On appeal, Houpt assigns as error that his trial counsel provided ineffective assistance by failing to confirm the length of the knife which gave rise to Houpt's possession of a deadly weapon charge and by advising Houpt he would receive a sentence of probation if he agreed to plead no contest to the three charges.

## STANDARD OF REVIEW

Whether a claim of ineffective assistance of trial counsel can be determined on direct appeal presents a question of law, which turns upon the sufficiency of the record to address the claim without an evidentiary hearing or whether the claim rests solely on the interpretation of a statute or constitutional requirement. See *State v. Castillo-Zamora*, 289 Neb. 382, 855 N.W.2d 14 (2014). We determine as a matter of law whether the record conclusively shows that (1) a defense counsel's performance was deficient or (2) a defendant was or was not prejudiced by a defense counsel's alleged deficient performance. See *id.*

## ANALYSIS

Houpt is represented in this direct appeal by different counsel than the counsel who represented him at the trial level. When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record. Otherwise the issue will be procedurally barred. *State v. Casares*, 291 Neb. 150, 864 N.W.2d 667 (2015). The fact that an ineffective assistance of counsel claim is raised on direct appeal does not necessarily mean that it can be resolved. *State v. Mendez-Osorio*, 297 Neb. 520, 900 N.W.2d 776 (2017). The determining factor is whether the record is sufficient to adequately review the question. *Id.*

To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that counsel's performance was deficient and that this deficient performance actually prejudiced his or her defense. *State v. Ortega*, 290 Neb. 172, 859 N.W.2d 305 (2015). In a plea context, deficiency

- 4 -

depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases. *State v. Blaha*, 303 Neb. 415, 929 N.W.2d 494 (2019).

When a claim of ineffective assistance of trial counsel is raised in a direct appeal, the appellant is not required to allege prejudice; however, an appellant must make specific allegations of the conduct that he or she claims constitutes deficient performance by trial counsel. *State v. Casares, supra.* General allegations that trial counsel performed deficiently or that trial counsel was ineffective are insufficient to raise an ineffective assistance claim on direct appeal and thereby preserve the issue for later review. *Id.*

Appellate courts have generally reached ineffective assistance of counsel claims on direct appeal only in those instances where it was clear from the record that such claims were without merit or in the rare case where trial counsel's error was so egregious and resulted in such a high level of prejudice that no tactic or strategy could overcome the effect of the error. *Id.* An ineffective assistance of counsel claim made on direct appeal can be found to be without merit if the record establishes that trial counsel's performance was not deficient or that the appellant could not establish prejudice. *Id.* See, also, *State v. Filholm,* 287 Neb. 763, 848 N.W.2d 571 (2014).

*Failure to Confirm Length of Knife Blade.*

As part of the plea agreement, Houpt pled no contest to possession of a deadly weapon by a prohibited person. This charge arose from Houpt having a knife on his person when he was contacted by police on July 3, 2019. Houpt is a convicted felon.

Neb. Rev. Stat. § 28-1206 (Reissue 2016) provides that "[a] person commits the offense of possession of a deadly weapon by a prohibited person if he . . . [p]ossesses . . . a knife . . . and he . . . [h]as previously been convicted of a felony." A knife is defined in Neb. Rev. Stat. § 28-1201(5) (Reissue 2016) as:

> (a) Any dagger, dirk, knife, or stiletto with a blade over three and one-half inches in length and which, in the manner it is used or intended to be used, is capable of producing death or serious bodily injury; or
>
> (b) Any other dangerous instrument which is capable of inflicting cutting, stabbing, or tearing wounds and which, in the manner it is used or intended to be used, is capable of producing death or serious bodily injury.

In the State's factual basis, it alleged that the length of the blade on the knife recovered from Houpt was "approximately 3 and 7/8 inches long." On appeal, Houpt alleges that his trial counsel was ineffective in failing to investigate "the actual length of Houpt's knife." Brief for appellant at 7. Essentially, Houpt's argument on appeal alludes to his belief that if the blade of his knife had been less than 3½ inches long, he could not have been convicted of possession of a deadly weapon by a felon pursuant to the language of § 28-1206. We question the accuracy of Houpt's belief about whether he would be acquitted of possession of a deadly weapon by a felon if the blade of his knife was less than 3½ inches long. See *State v. Bottolfson*, 259 Neb. 470, 610 N.W.2d 378 (2000) (holding that even if blade of knife is less than 3½ inches long, it can still be knife pursuant to § 28-1201 if State can prove that it is dangerous instrument capable of inflicting

cutting, stabbing, or tearing wounds). However, even if we were to assume Houpt's assertion was correct, his ineffective assistance of counsel claim must fail.

At the plea hearing, Houpt was given a chance to comment on the factual basis provided by the State. Houpt did not dispute or comment on any of the facts outlined. Specifically, he did not dispute that the blade of his knife measured 3⅞ inches long. Moreover, at the hearing, Houpt affirmatively indicated to the court that he had informed his trial counsel about everything he knew about this case. Presumably, if Houpt believed that his knife was shorter than 3⅞ inches long, as the State was alleging, he would have discussed this with counsel prior to accepting the plea. Finally, we note that nowhere in Houpt's brief on appeal does he allege that his knife actually measured anything other than 3⅞ inches long. As such, it does not appear that any further inquiry by his trial counsel would have produced relevant information or that such investigation would have changed Houpt's mind about entering into the plea agreement.

The record affirmatively refutes Houpt's claim that his counsel provided ineffective assistance in failing to further investigate the exact length of the blade of the knife found on Houpt's person at the time of his arrest.

*Advising Houpt Regarding Sentence of Probation.*

On appeal, Houpt also alleges that his trial counsel provided ineffective assistance by, incorrectly, advising him that if he entered into the plea agreement with the State, he would receive probation as a sentence. The record affirmatively refutes Houpt's claim. First, when the State delineated the terms of the plea agreement for the district court, it specifically noted that there was no agreement among the parties regarding sentencing. Upon the district court's inquiry, Houpt indicated that he agreed with the State's recitation of the terms of the plea agreement. Houpt also indicated that outside of the agreement, there had been no threats or promises made to induce his no contest pleas. Second, the district court explicitly told Houpt that even if there were a sentencing agreement, that the court was not bound by such an agreement. Houpt indicated his understanding of the court's statement. Finally, during the sentencing hearing, Houpt's trial counsel told the district court that Houpt was not requesting probation, but was instead asking for a short jail sentence. When Houpt was asked if he had anything to address to the court, he said nothing about his counsel's comments with regard to probation.

As the Nebraska Supreme Court has previously stated:

> If the dialogue which is required between the court and the defendant whereat, as here, the court receives an affirmative answer as to whether the defendant understands the specified and full panoply of constitutional rights . . . and whether it is true that defendant was not improperly influenced by threats or promises . . . all done during the sanctity of a full and formal court proceeding, is to be impugned by a mere recantation made after the doors of the prison clang shut, we are wasting our time and that of the trial judges, making a mockery out of the arraignment process.

*State v. Scholl*, 227 Neb. 572, 580, 419 N.W.2d 137, 142 (1988).

Because the record affirmatively refutes Houpt's allegation that trial counsel misrepresented the plea agreement by promising him he would receive a sentence of probation, Houpt has not demonstrated that his counsel provided ineffective assistance in this regard.

## CONCLUSION

We find that Houpt was not denied effective assistance of trial counsel when counsel failed to confirm the length of Houpt's knife blade or when counsel advised him regarding the possible sentences he faced. The evidence contained in our record refutes Houpt's claims. As such, we affirm his convictions.

AFFIRMED.