IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. RENTERIA-DELGADO

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

SANTOS RENTERIA-DELGADO, APPELLANT.

Filed August 23, 2022.    No. A-21-665.

Appeal from the District Court for Douglas County: JAMES M. MASTELLER, Judge. Affirmed.

Jerry M. Hug for appellant.

Douglas J. Peterson, Attorney General, and Nathan A. Liss for appellee.

PIRTLE, Chief Judge, and BISHOP and WELCH, Judges.

WELCH, Judge.

## I. INTRODUCTION

Santos Renteria-Delgado appeals from his jury convictions of two counts of first degree sexual assault of a child alleging that his trial counsel was ineffective. For the reasons set forth herein, we affirm; however, we determine that the record on appeal is insufficient to address Renteria-Delgado's claims of ineffective assistance of trial counsel.

## II. STATEMENT OF FACTS

In 2019, the State charged Renteria-Delgado with two counts of first degree sexual assault of a child, both Class IB felonies. The complaint alleged that between January 1, 2018, and April 17, 2019, Renteria-Delgado sexually assaulted his two great nieces, J.S. and X.S., both of whom were under 12 years of age. The evidence established that Renteria-Delgado was born in November 1967, J.S. was born in April 2010, and X.S. was born in July 2012.

- 1 -

J.S. and X.S. lived in the upstairs unit of a split-level home with their parents and their aunt. Renteria-Delgado lived in the downstairs unit with other extended family. The victims' parents worked long hours and Renteria-Delgado would often watch the victims while their parents were at work. In July 2018, the victims moved into a new home with their parents and siblings.

In April 2019, after watching a T.V. show about a girl who had been raped, the victims disclosed to their 13-year-old sister, Y.L., that Renteria-Delgado had touched them and motioned toward their chest and private areas. The following day, the victims disclosed the assault to their mother who reported the assault to police. At the time of the disclosure, J.S. was 8 or 9 years old, and X.S. was 6 years old. Following the disclosure, the victims underwent forensic interviews.

During J.S.'s forensic interview, she disclosed that on several occasions, Renteria-Delgado, who she referred to as "Uncle Santos," had "done things" to J.S. and X.S. mostly at their "old house." According to J.S., during one incident, Renteria-Delgado told her to touch his "private parts" while he was in the bathroom peeing, but J.S. did not comply. On another occasion, J.S. stated that Renteria-Delgado showed J.S. and X.S videos on his phone of adults who were naked, kissing, and touching each other's "private parts," but Renteria-Delgado did not touch them on that occasion. However, J.S. reported that there were times when Renteria-Delgado did touch them, including one incident which took place in the basement living room at their old house, where Renteria-Delgado had "licked" both her and X.S.' "private part[s]" and that "it hurt to pee afterward." J.S. also recalled two other incidents where she was alone with Renteria-Delgado in the basement living room of the old house when he closed the curtains and "put his private part in my butt." According to J.S., during those two incidents she was lying on her stomach on the couch and Renteria-Delgado pulled her pants down around her ankles, put a "thing" around his "private part," and then got on top of her and put it into her butt, which hurt. J.S. described Renteria-Delgado's "private part" as "long and hairy" and described the "thing" he put on his "private part" as "soggy," "wet and rubbery," and "there's a hole he puts it in." J.S. said that Renteria-Delgado got the "soggy thing" from a little square package and put it back in the package when he was done. She also stated that, during one of the incidents, he made her lick the "soggy thing" on his private part.

J.S. also reported additional incidents which occurred after they had moved to the new house. She recalled that Renteria-Delgado would sometimes "touch our boobs." She also recalled another incident when he touched her private part with his hand, over her clothes, while the rest of the family was away from home getting groceries. J.S. stated that during the incidents, at both the old and new home, she did not remember anyone being home except Renteria-Delgado, J.S., and X.S. J.S. said that she was scared to tell anyone about what Renteria-Delgado did because he told her not to tell anyone and she was afraid that her parents would be mad at her.

During her forensic interview, X.S. reported that Renteria-Delgado showed her and J.S. "gross stuff" on his phone including a video of a boy putting his "banana" in a girl's butt. X.S. recalled that Renteria-Delgado then asked them if they wanted to do that and both girls said no. X.S. disclosed that, on one occasion, Renteria-Delgado made them go with him to the bathroom where he pulled out his penis which she described "like a hot dog thingy." X.S. similarly reported that Renteria-Delgado touched them where they "poop and pee" and that it felt like he was trying to "pull out the poop." X.S. reported that after one of the incidents where Renteria-Delgado had touched her butt, she used the bathroom, and when she wiped, she noticed she was bleeding from

"where she poops." X.S. further described incidents where Renteria-Delgado touched and licked her chest, which she called her "Chi Chis;" licked her and J.S.'s "privates" and butts; and that he used his "banana" to touch their butts. X.S. reported Renteria-Delgado occasionally made them massage his "private part" and that something other than pee came out which X.S. stated looked like "milk or throw up from his thingy," and that he would use a napkin to clean up afterwards. X.S. stated that she and J.S. were afraid to tell their parents about the assaults because Renteria-Delgado said that he would hit them and he would go to jail.

Following the report to law enforcement, officers interviewed Renteria-Delgado who, at that time, denied touching the victims or doing anything inappropriate to them. After obtaining a second warrant, officers conducted a search of Renteria-Delgado's home and seized several items from his bedroom, including, among other things, several condoms, a pair of a female child's underwear near a laundry basket, and four cell phones. The phones were subsequently searched and one phone indicated a history of the user visiting pornographic websites.

At trial, which was held over four days in May 2021, both victims testified to much of the same information contained in their forensic interviews. Additionally, J.S. testified that when Renteria-Delgado touched her private part and her butt, he would touch her on the inside and the outside of her body using his hands, tongue, or his "private part." She described his private part as "stiff" when he put it inside her, which hurt, and she recalled one time where he put something clear and plastic on his private part before he put it into her butt which he then threw away afterward. J.S. testified that he did similar things to X.S. if X.S. was present, but no one else was present when these things occurred. J.S. testified that Renteria-Delgado would tell them not to tell their mom or he would go to jail, and he would sometimes give them candy, stuffed animals, and toys. X.S. explained that Renteria-Delgado used his hand or "front private part" to touch her on the inside of her privates and there were times when he also touched J.S.

The victims' parents, sister, forensic interviewer, and medical examiner also testified on behalf of the State. The victim's mother testified about the children's disclosure to her, her report to the police, and the physical and behavioral changes in the victims after the assaults. The victims' father testified that, following the victims' disclosure, he confronted Renteria-Delgado who admitted that "he had done [some]thing to them," but did not elaborate further. Y.L. testified regarding the victims' initial disclosures to her, the changes she noticed in her sisters, and her observations including that Renteria-Delgado often bought items for the victims but did not do the same for her when she would ask.

The jury convicted Renteria-Delgado of both counts of first degree sexual assault of a child. Thereafter, Renteria-Delgado was sentenced to a mandatory minimum of 15 years' imprisonment and a maximum of 25 years' imprisonment on each count with the sentences ordered to run consecutively. Renteria-Delgado has timely appealed his convictions and is represented by new counsel on appeal.

## III. ASSIGNMENTS OF ERROR

Renteria-Delgado's assignments of error, renumbered and restated, are that he received ineffective assistance of trial counsel due to counsel's: (1) failure to properly impeach the alleged victims J.S. and X.S. regarding prior inconsistent statements and (2) informing the jurors during

opening statements that they would hear testimony from the victims' grandparents but then failing to call them at trial to provide testimony which would have been favorable for the defense.

## IV. STANDARD OF REVIEW

In reviewing claims of ineffective assistance of counsel on direct appeal, an appellate court decides only whether the undisputed facts contained within the record are sufficient to conclusively determine whether counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance. *State v. Smith*, 302 Neb. 154, 922 N.W.2d 444 (2019).

Whether a claim of ineffective assistance of trial counsel can be determined on direct appeal presents a question of law, which turns upon the sufficiency of the record to address the claim without an evidentiary hearing or whether the claim rests solely on the interpretation of a statute or constitutional requirement. *State v. Collins*, 307 Neb. 581, 950 N.W.2d 89 (2020). An appellate court determines as a matter of law whether the record conclusively shows that (1) a defense counsel's performance was deficient or (2) a defendant was or was not prejudiced by a defense counsel's alleged deficient performance. *Id.*

## V. ANALYSIS

On appeal, Renteria-Delgado assigns as error, consolidated and restated, that his trial counsel was ineffective in two ways: (1) failing to properly impeach the alleged victims J.S. and X.S. regarding prior inconsistent statements, and (2) failing to call the victims' grandparents as defense witnesses despite telling jurors during opening statements that they would hear testimony from them which would have been favorable for the defense.

To prevail on a claim of ineffective assistance of counsel, a defendant must show that his or her counsel's performance was deficient, and that the deficient performance actually prejudiced the defense. *State v. Collins, supra.* To show that counsel's performance was deficient, a defendant must show that counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law. *Id.* To show prejudice, the defendant must demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. *Id.* A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.* However, on direct appeal, an appellant is not required to allege prejudice when claiming ineffective assistance of trial counsel. *State v. Filholm*, 287 Neb. 763, 848 N.W.2d 571 (2014).

On direct appeal, the resolution of ineffective assistance of counsel claims turns upon the sufficiency of the record. *Id.* The Nebraska Supreme Court has often said that the fact that an ineffective assistance of counsel claim is raised on direct appeal does not necessarily mean that it can be resolved. *Id.* The determining factor is whether the record is sufficient to adequately review the question. *Id.* The Supreme Court has held in countless cases that the record on direct appeal was insufficient for assessing ineffective assistance of counsel claims. *Id.* This is because the trial record reviewed on appeal is devoted to issues of guilt or innocence and does not usually address issues of counsel's performance. *Id.*

It naturally follows that on direct appeal, an appellate court can determine whether the record proves or rebuts the merits of a claim of ineffective assistance of trial counsel only if it has

- 4 -

knowledge of the specific conduct alleged to constitute deficient performance. *Id.* Therefore, an appellant must make specific allegations of the conduct that he or she claims constitutes deficient performance by trial counsel when raising an ineffective assistance claim on direct appeal. *Id.* General allegations that trial counsel performed deficiently or that trial counsel was ineffective are insufficient to raise an ineffective assistance claim on direct appeal and thereby preserve the issue for later review. *Id.*

Appellate courts have generally reached ineffective assistance of counsel claims on direct appeal only in those instances where it was clear from the record that such claims were without merit or in the rare case where trial counsel's error was so egregious and resulted in such a high level of prejudice that no tactic or strategy could overcome the effect of the error, which effect was a fundamentally unfair trial. *State v. Sundquist*, 301 Neb. 1006, 921 N.W.2d 131 (2019); *State v. Casares*, 291 Neb. 150, 864 N.W.2d 667 (2015); *State v. Sidzyik*, 281 Neb. 305, 795 N.W.2d 281 (2011).

### 1. IMPROPER IMPEACHMENT OF J.S. AND X.S.

Renteria-Delgado first argues that his trial counsel was ineffective "by failing to properly impeach both J.S. and X.S. on cross-examination regarding inconsistent statements made during their forensic interviews, depositions and trial testimony" but "was unable to impeach either of the victims due to an inability to properly follow evidentiary requirements for impeachment through prior inconsistent statements." Brief for appellant at 5.

### (a) Claims Regarding J.S.

Regarding J.S., Renteria-Delgado contends that trial counsel attempted to impeach J.S. through use of prior inconsistent statements made during a prior deposition. Renteria-Delgado argues that:

> After two substantive questions counsel asked J.S., "And when we spoke before, I asked you if [Renteria-Delgado] touched you with any part of his body, and you said just his hand. Do you remember that?" . . . The State interposed an objection as to improper impeachment which was sustained. . . . Counsel proceeded to ask J.S. if she recalled speaking with counsel "before" to which J.S. responded yes at which time counsel then stated that J.S. did not say at that time what was said "today". The State again objected as improper impeachment and the court asked counsel to rephrase the question. Counsel did so but shortly thereafter another improper impeachment objection was made and a sidebar ensued. . . .
>
> As counsel continued questioning J.S. he asked her a series of questions about whether she recalled previously telling him specifics about where [Renteria-Delgado] touched her, whether she previously told counsel if [Renteria-Delgado] "went inside her" and whether [J.S.] previously . . . responded "no" to all of those questions. . . . At that point counsel moved on to cross-examine J.S. regarding other topics unrelated to prior statements and eventually ending cross-examination.

Brief for appellant at 7-8.

As to the subject of these confrontations, Renteria-Delgado argues:

- 5 -

While the deposition of J.S. is not a part of the record, it is clear from the attempted cross-examination that counsel had prior inconsistent statements with which to impeach J.S. Counsel simply failed to do so in the proper manner and as such no substantive impeachment of J.S. occurred. Additionally, counsel failed to address J.S.'s multiple "no" responses regarding her recollection of her previously sworn deposition testimony and let those answers stand without further attempts to refresh her recollection and establish actual inconsistent statements.

Brief for appellant at 8-9.

Although we find that Renteria-Delgado has stated this claim of ineffective assistance of trial counsel with sufficient particularity, because the deposition of J.S. is not part of the record, the record is insufficient for this claim to be addressed on direct appeal.

### (b) Claims Regarding X.S.

Renteria-Delgado makes a similar claim regarding trial counsel's alleged ineffectiveness for failing to properly impeach X.S. on cross-examination. Regarding X.S., Renteria-Delgado contends that trial counsel was ineffective in failing to substantively establish X.S.' prior inconsistent statements or otherwise address X.S.' testimony that she did not recall making prior inconsistent statements. Specifically, he argues:

During cross-examination of X.S., again counsel attempted to impeach the witness by asking a series of questions about her previous statements to counsel that [Renteria-Delgado] had dragged her into the bathroom, that she had previously stated that [Renteria-Delgado] had only touched her with [h]is hand, and she previously stated at times she would be woken up and dragged downstairs by [Renteria-Delgado]. . . . X.S. responded "no" to each of these questions [regarding] whether she recalled making these previous statements. Without any further inquiry or attempts to substantively establish that X.S. had actually given prior inconsistent statements counsel stopped cross-examination shortly thereafter. . . . While the deposition of J.S. [sic] is not a part of the record, it is clear from the attempted cross-examination that counsel had prior inconsistent statements with which to impeach J.S. [sic] Counsel simply failed to do so in the proper manner and as such no substantive impeachment of J.S. [sic] occurred.

Brief for appellant at 10.

Like we found in the previous section, although we find that Renteria-Delgado has stated this claim of ineffective assistance of trial counsel with sufficient particularity, because the deposition of X.S. is not part of the record, the record is insufficient for this claim to be addressed on direct appeal.

### 2. FAILURE TO CALL VICTIMS' GRANDPARENTS AT TRIAL

Renteria-Delgado next argues that he received ineffective assistance of counsel when counsel mentioned in his opening statement that the jury would hear from the victims' grandparents, but then failed to call them as witnesses during the trial. He contends that the victims' grandparents would have provided testimony favorable to the defense.

During opening statements, defense counsel told the jury that they would hear from the grandparents of the children who lived at the house who said this couldn't have happened, it's a small location, perhaps a smaller house than some of you are accustomed to living in. Small space, the girls were happy, weren't crying, no noises, not possible. The grandparents were in the room, or next to it.

Counsel did not call the grandparents as witnesses during the trial and the defense rested without presenting evidence. Renteria-Delgado asserts that counsel was ineffective because the grandparents were willing to testify, counsel told the jury that they would testify, and that the grandparents' testimony would benefit the defense.

More specifically, Renteria-Delgado contends that counsel knew or reasonably should have known that based on counsel's conversations with the victims' grandmother, that the grandmother would have testified that the victims' parents rented part of her home; that she took care of the victims when the victims' parents were absent; that there were no reports of sexual abuse; that her observations of Renteria-Delgado would not corroborate the allegations against him; that Renteria-Delgado was constantly in the company of his girlfriend who also lived in the home; and that the victims' parents had motivations to claim sexual abuse since the victims' mother believed that such allegations would aid her husband in obtaining legal status in the U.S.

A somewhat analogous situation was addressed by the Nebraska Supreme Court in *State v. Loding*, 296 Neb. 670, 682-83, 895 N.W.2d 669, 681 (2017), wherein the Court considered whether defense counsel's failure to call the victim's mother as a defense witness despite stating in opening statements that she would testify:

> As [the defendant] conceded at oral argument, his brief misstated the record when he argued that counsel failed to explain why [the victim's] mother did not testify. The record shows that [defense] counsel explained, "We said we would call the mother . . . we said that in the beginning because we thought the state would prove its case, and it has not."
>
> During closing argument, counsel explained multiple times that the burden of proof was on the State to prove beyond a reasonable doubt that [the defendant] was guilty. Counsel then reviewed the evidence and explained to the jury why the State had not met its burden. Outside the presence of the jury, [defense counsel] confirmed on the record that the mother did not want to testify and that he did not want her to testify.
>
> But the record does not explain why, during opening statement, counsel elected to tell the jury that [the victim's] mother would be called to testify. Although the record shows how the problem was addressed, the record does not show how it came about. Under these circumstances, we conclude that the record is not sufficient to address this matter on direct appeal.

Similarly, in *State v. Avina-Murillo*, 301 Neb. 185, 917 N.W.2d 865 (2018), the Nebraska Supreme Court concluded that the record was insufficient on direct appeal to resolve the defendant's claim that trial counsel was ineffective for failing to call the victim's parents as witnesses after informing the jury of those witnesses' testimonies during opening statements.

Here, the record is also insufficient to address this matter on direct appeal. During opening statements, defense counsel informed the jury that the grandparents would testify, but then he did not call them as witnesses. Further, unlike *Loding*, the record in the instant case does not contain any explanations for the counsel's failure to call the grandparents at trial. Accordingly, the record before this court is not sufficient to address this matter on direct appeal.

## VI. CONCLUSION

For the reasons stated above, we affirm Renteria-Delgado's jury conviction of two counts of first degree sexual assault of a child. Regarding Renteria-Delgado's claims of ineffective assistance of trial counsel for failing to properly impeach the alleged victims J.S. and X.S. regarding prior inconsistent statements and failing to call the victims' grandparents as defense witnesses after informing jurors during opening statements that they would hear testimony from the grandparents, we find that the record is insufficient to address these claims on direct appeal.

AFFIRMED.